*473 MARKMAN, J.
(dissenting). I respectfully dissent and would reverse the judgment of the Court of Appeals and vacate the forfeiture award. I agree with the majority that: (a) illegally seized property may not be relied on to sustain its own forfeiture; (b) illegally seized property may only be offered into evidence for the limited purpose of establishing its existence and the court’s jurisdiction over it; (c) illegally seized property may only be forfeited if such forfeiture is supported by a preponderance of the untainted evidence; and (d) therefore, the principles of law set forth in In re Forfeiture of United States Currency, 166 Mich App 81; 420 NW2d 131 (1988), and United States v $639,558 in United States Currency, 293 US App DC 384; 955 F2d 712 (1992), are correct. Nonetheless, I disagree with the result reached by the majority because it fails to apply these rules.
In particular, the majority redefines the proposition that illegally seized property may only be offered into evidence for the purpose of establishing its existence and the court’s jurisdiction over it. Although evidence of such property was suppressed here, the majority improperly relies on a variety of “surrounding circumstances” and “implications” concerning the illegally seized property (in this case, money) to support the forfeiture award. Absent consideration of these “circumstances” and “implications,” the remaining untainted evidence would clearly be insufficient to support the forfeiture. By these means, the majority seeks to make painless the suppression of evidence by rendering it largely irrelevant; in the end, the suppression constitutes a mere inconvenience that has little effect on the government’s ability to use the illegally seized property as evidence.
It is important to note at the outset that the applicability of the exclusionary rule to forfeiture proceed *474 ings in general, and the propriety of the trial court’s suppression of the $180,975 in particular, are not at issue here. The prosecutor has not chosen to appeal either of these decisions. Therefore, we must assume for purposes of this appeal that the suppression of evidence was constitutionally required. The only issues on appeal are whether the suppressed evidence may be used to support the forfeiture, and whether, absent this evidence, there is sufficient untainted evidence to support the forfeiture.
I. FACTS AND PROCEDURAL HISTORY
Claimant Tamika Smith was stopped for speeding while traveling west on I-94 in a rental car with her two children and an adult male named Todd F. Fletcher. A Law Enforcement Information Network (LEIN) search revealed that Smith’s driver’s license had been suspended. After the state trooper ticketed Smith for speeding and driving on a suspended license, the trooper searched the trunk of the car without Smith’s consent and discovered a backpack filled with $180,975.
The prosecutor subsequently filed the instant complaint for forfeiture of the $180,975, pursuant to MCL 333.7521(1)(f).[1] The trial court granted Smith’s motion *475 to suppress evidence of the money on the basis that it had been seized pursuant to an illegal search, and the prosecutor did not appeal. Following a bench trial, the trial court entered a judgment of forfeiture, finding that, even without the illegally seized evidence, the prosecutor had established that the money was intended to purchase illicit drugs. The court based its decision on the fact that: (1) Smith had “a very large amount of money”; (2) Smith’s income peaked at $14,000 a year and she was usually making $4,000 to $5,000 a year; (3) westbound 1-94 is a known corridor for transporting drug monies from Detroit to Chicago; (4) rental cars are frequently used to transport drugs; and (5) Smith had frequently rented cars in Detroit. The Court of Appeals affirmed, further noting that “an expert [witness] opined that the large amount of cash claimant was transporting west on I-94 was consistent with claimant’s being a courier and intending to purchase drugs.” Unpublished opinion per curiam of the Court of Appeals, issued December 28, 2004 (Docket No. 249699), slip op at 2.
II. ANALYSIS
A. EXCLUSIONARY RULE IN FORFEITURE PROCEEDINGS
The exclusionary rule generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search. Weeks v United *476 States, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914); Silverman v United States, 365 US 505; 81 S Ct 679; 5 L Ed 2d 734 (1961); see also People v LoCicero, 453 Mich 496, 508; 556 NW2d 498 (1996) (“The exclusionary rule forbids the use of direct and indirect evidence acquired from governmental misconduct, such as evidence from an illegal police search.”);[2] Mapp v Ohio, 367 US 643, 648; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) (“ ‘[T]he Fourth Amendment barred the use of evidence secured through an illegal search and seizure.’ ”) (citation omitted).
Black’s Law Dictionary (6th ed), p 563, defines “exclusion” of evidence as “[t]he action by the trial judge in which he excludes from consideration by the trier of fact whatever he rules is not admissible as evidence.” To “exclude” is defined by Random House Webster’s College Dictionary (1997) as “1. to shut or keep out; prevent entrance of. 2. to shut out from consideration, privilege, etc. 3. to expel and keep out; thrust out; eject.” “Suppression of evidence” is defined as “[t]he ruling of a trial judge to the effect that evidence sought to be admitted should be excluded because it was illegally acquired,” and to “suppress evidence” as “to keep it from being used in a trial by showing that it was either gathered illegally or that it is irrelevant.” Black’s Law Dictionary (6th ed), p 1440. To “suppress” is defined as “to do away with by or as if by authority; abolish; stop (a practice, custom, etc.); to withhold from *477 disclosure or publication (evidence, a book, etc.); to keep (a thought, memory, etc.) out of conscious awareness.” Random House Webster’s College Dictionary (1997). Thus, once suppressed or excluded, evidence should generally be treated as nonexistent and withheld from disclosure and consideration in legal proceedings, except under very specifically delineated exceptions. See, e.g., United States v Havens, 446 US 620; 100 S Ct 1912; 64 L Ed 2d 559 (1980) (although illegally seized evidence is inadmissible as substantive evidence, it is admissible for impeachment purposes); United States v Calandra, 414 US 338; 94 S Ct 613; 38 L Ed 2d 561 (1974) (illegally seized evidence is admissible in grand jury proceedings).
As the majority correctly notes, in a civil forfeiture proceeding where the illegally seized property is itself the “defendant,” such property is not entirely excluded from the forfeiture proceedings, but rather, “may be offered into evidence for the limited purpose of establishing its existence, and the court’s in rem jurisdiction over it.” $639,558, supra at 715 n 5. In other words, the excluded property may be identified as the defendant in a forfeiture proceeding, Immigration & Naturalization Service v Lopez-Mendoza, 468 US 1032, 1039-1040; 104 S Ct 3479; 82 L Ed 2d 778 (1984), but may not be “relied upon to sustain a forfeiture.” One 1958 Plymouth Sedan v Pennsylvania, 380 US 693, 698; 85 S Ct 1246; 14 L Ed 2d 170 (1965); $639,558, supra at 715 n 5. Despite its exclusion, the illegally seized property remains subject to forfeiture under MCL 333.7521 if the forfeiture can be supported by a preponderance of other, untainted evidence. See In re Forfeiture of United States Currency, supra at 89; People v United States Currency, *478 158 Mich App 126, 130; 404 NW2d 634 (1986); United States v “Monkey,” a Fishing Vessel, 725 F2d 1007, 1012 (CA 5, 1984).[3]
B. MAJORITY’S REDEFINITION OF EXCLUSIONARY RULE
While the majority purports to apply this law, it effectively redefines the law to avoid the necessary consequences of the exclusionary rule. It does this through its central assertions that the use of suppressed evidence “should be limited to the circumstances surrounding its existence,” ante at 460, that the court must not “turn a blind eye to the conclusions one reaches when considering all of the circumstances surrounding [the suppressed evidence’s] existence and its implications,” ante at 462[4] and that “while the court may not consider the specific physical characteristics of the item itself, the court can consider evidence presented in relation to the fact of the item’s existence, such as the fact that claimant’s testimony *479 about the money itself is questionable,” ante at 463.[5] The majority also effectively redefines this law through its conclusion that “the court can consider the reliability of the claimant’s testimony concerning the money’s origin, its existence in her rental car, its intended purpose, the amount of the money in relation to her reported income . . ., and any other circumstantial factors not specifically related to the physical characteristics of the money,” ante at 463, and that “the trial court could properly consider the implications of the presence of such a large amount of cash in the vehicle.” Ante at 464. Apparently, all that the majority would exclude from consideration is the color of the currency and the Presidents who are pictured on it.
However, as noted, suppressed evidence is admissible only to “establish its existence,” not “the circumstances surrounding its existence” or their “implications.” While we may consider the fact that the excluded property subject to forfeiture exists, as a consequence of the suppression, we may not rely on any other information relating to this property, such as the place where it was found, its value, its physical characteristics, or any explanation regarding its origin or intended use, to sustain the property’s forfeiture. The “establishment of its existence” exception to suppression is required to allow identification of the defendant property and to justify the court’s jurisdiction over the property. Because suppressed evidence is inadmissible for broader purposes, LoCicero, supra at 508, the majority’s new *480 rule, which allows the “surrounding circumstances” of the illegally seized property and their “implications” to be considered, constitutes an incorrect reading of the law.[6]
In avoiding the necessary consequences of the exclusionary rule, the trial court, the Court of Appeals, and now the majority have each made increasing use of evidence that must be considered nonexistent. The trial court based its forfeiture, in part, on the fact that Smith was transporting “a very large amount of money,” which was unlikely to be the product of her legitimate income, and that Smith had not given a credible explanation for the presence of the money in the trunk of her rental car. The Court of Appeals noted that “[a]n expert opined that the large amount of cash claimant was transporting west on 1-94 was consistent with claimant’s being a courier and intending to purchase drugs.” Slip op at 2. The majority quotes with approval both the trial court and Court of Appeals decisions, and concludes that “while the cash itself was excluded from evidence, the trial court could properly consider the implications of the presence of such a large amount of cash in the vehicle.” Ante at 464.
*481 C. MAJORITY’S RELIANCE ON IRRELEVANT CASES
I cannot recall an opinion of this Court that employs caselaw as much to obscure as to illuminate. The several dozen cases cited in the majority opinion, with a single exception, either stand for undisputed propositions of law or are irrelevant to the question whether the “surrounding circumstances” and “implications” of illegally seized property may be considered to support a forfeiture. With that single exception, the cases cited by the majority can fairly be characterized as standing for three distinct propositions of law — none of which is in dispute and none of which actually supports the rule announced by the majority. These propositions of law may be stated as follows: (1) illegally seized property may only be offered into evidence for the limited purpose of establishing its existence and the court’s jurisdiction over it; (2) illegally seized property may still be forfeited, as long as the forfeiture is supported by sufficient untainted evidence; and (3) the circumstances surrounding the lawful seizure of property, such as the amount or value of the property, a claimant’s lack of legitimate income, the place where the property was seized, and a claimant’s false statements, can be relied on to support a forfeiture.
There is no dispute, for example, that illegally seized property may be offered into evidence for the limited purpose of establishing its existence and the court’s jurisdiction. Moreover, there is no dispute that illegally seized property may be forfeited on the basis of other, lawfully obtained evidence. However, the cases cited by the majority in support of these commonplace propositions of law do not speak to the permissibility of allowing consideration of the “surrounding circumstances” or “implications” of illegally seized property. From a commonplace proposition, the majority pro *482 ceeds to an invented proposition. Indeed, some of the cases cited by the majority are not merely irrelevant, but support the opposite of the majority’s new rule. For example, in $639,558, evidence of a positive drug-dog sniff of the claimant’s luggage and money seized from his luggage were suppressed because of an illegal search. With that evidence suppressed, the only remaining untainted evidence was the fact that the claimant was engaged in a “suspicious” form of travel and that he was departing from a city known to be a source of drugs — evidence that bears a striking similarity to the untainted evidence in the instant case. Solely on the basis of the untainted evidence, the prosecutor conceded,[7] and the District of Columbia Circuit Court of Appeals did not dispute, that there was insufficient evidence remaining to support the forfeiture. In other words, the “surrounding circumstances” of the illegally seized money, such as the fact that the claimant was carrying a “large amount of money,” were not considered and, therefore, the forfeiture proceeding was dismissed. Likewise, in “Monkey”, the Fifth Circuit Court of Appeals did not rely on the “surrounding circumstances” of the evidence illegally seized from the fishing vessel, but rather held that a forfeiture was supported in spite of the suppression on the basis of inferences resulting from the claimant’s criminal trial and certain admissions made by the claimant in his appellate brief.
Finally, the majority purports to set forth a catalog of cases supporting its view that the “surrounding circumstances” and “implications” of illegally seized property may be considered to support a forfeiture. However, *483 each of these cases, with, as already noted, a single exception, involved legal searches and seizures. Once more, there is no dispute that evidence drawn from lawfully seized property is fully admissible in support of a forfeiture. Any information concerning such evidence, including their “surrounding circumstances” and “implications,” was admissible in support of their forfeiture. Most certainly, these cases do not stand for the majority’s proposition that unlawfully obtained evidence may be relied on to sustain its own forfeiture.[8]
Once the majority’s irrelevant caselaw is set aside, there is not much left. All that remains is a single trial court decision containing not a single sentence of reasoning and not a single word of analysis, indeed a decision subsequently rendered a nullity by the appellate court. United States v $22,287 in United States Currency, 520 F Supp 675, 680 (ED Mich, 1981).[9] In $22,287, the court noted that $22,287, which had been excluded, constituted “an unusually large amount of cash for any individual to have on hand, [and] is very close to the price of ‘nineteen five’ ($19,500.00) noted by Johnny [an alleged drug dealer] as the cost of an ‘lb’ (pound of heroin).” As a result, the court relied on this excluded evidence, as well as other untainted evidence, to grant the forfeiture. The court reached this conclusion with absolutely no analysis justifying its reliance *484 on the suppressed evidence. Moreover, the persuasive force of this case — already minimal to begin with given its absence of analysis — is further diminished, if not altogether nullified, by the fact that the Sixth Circuit Court of Appeals subsequently determined that no illegal search had occurred and therefore rejected any exclusion of evidence. 709 F2d 442 (CA 6, 1983).[10]
D. PROPER APPLICATION OF EXCLUSIONARY RULE
The majority acknowledges that the only purpose for which excluded evidence may be used in the instant forfeiture action is to establish its “existence” and the court’s jurisdiction over it, but then concludes that other information regarding the excluded property is admissible. However, under traditional understandings of what it means for property to be “suppressed,” the trial court could not rely on the fact that Smith was actually carrying money in the car, that the money was seized in a known drug corridor, that the amount of money was substantial, that Smith did not have the means to legitimately possess this amount of money, or that Smith could not give a credible explanation about why she was carrying this amount of money with her.* [11] *485 Under the rule of In re Forfeiture of United States Currency, except for its mere existence, all other evidence pertaining to the money is deemed inadmissible; no matter how indispensable this evidence, the court may not rely on it in support of a forfeiture.
Absent the suppressed evidence, the evidence in this case is clearly insufficient to support forfeiture by a preponderance of the evidence. Rather, the untainted evidence — what is left after the illegally seized money has been excluded from consideration, as it must be— supports two points of fact: (1) Smith, who has a very low income, was driving a rental car to Chicago for the fifth time in three months; and (2) drug couriers frequently carry large sums of money from Detroit to Chicago in rental cars. However, absent the evidence that Smith was actually carrying a large sum of money in a drug corridor at the time of the stop, there is simply no logical connection or nexus between these propositions. Such a logical connection or nexus is simply severed by the exclusionary rule. What is left is that *486 Smith, a person of low income, was a frequent traveler between Detroit and Chicago, a well-recognized drug corridor, in a rental car. These circumstances undoubtedly describe many persons who are not involved in the drug trade, and they describe what may be understood as entirely innocent behavior. It is only when the money is taken into consideration that this ordinary and innocent behavior is transformed into something less benign.[12] It is only when the money is taken into consideration that there is some semblance of a “drug courier profile” that emerges. Yet, the money cannot be taken into consideration because it has been suppressed and because the prosecutor has chosen not to challenge this suppression.
Moreover, Smith made no admissions of any kind, no evidence arose out of any criminal proceedings against her (for there were no such proceedings), Smith was not traveling with a known drug courier, and there was no witness testimony connecting Smith and large amounts of money, or otherwise indicating her involvement in *487 drug trafficking. Accordingly, the untainted evidence is insufficient to support the forfeiture under MCL 333.7521(1)(f).
III. OBSERVATIONS
This Court has previously acknowledged the “very high cost of the exclusionary rule.” People v Goldston, 470 Mich 523, 540; 682 NW2d 479 (2004); see also People v Hawkins, 468 Mich 488, 500 n 9; 668 NW2d 602 (2003). When suppression occurs, the prosecutor on behalf of the people is deprived of essential evidence in the presentation of his or her case, the fact-finder is denied access to potentially relevant facts and information, the justice system is impeded in its ability to discern the truth about wrongdoing, and the people must suffer within their communities persons who have harmed others and gone unpunished for their conduct. As Justice CORRIGAN has observed, by denying the fact-finder access to evidence, the exclusionary rule “impedes, rather than promotes, the truth-seeking function of the judiciary and thereby hinders public confidence in the integrity of the judicial process.” Goldston, supra at 540 n 9. The criminal trial regrettably must proceed “as though the dead body in the basement did not exist, as though the illegal firearm under the sofa was never really there, and as though the incendiary materials in the garage were merely a figment of one’s imagination.” Goldston, supra at 545 (MAEKMAN, J., concurring).
Given that there is no more important function of government than ensuring domestic tranquility and protecting people from violent predators, the costs of the exclusionary rule are extraordinarily high. I do not favor this rule, for I do not believe that it is required by the constitution. Nonetheless, the United States Su *488 preme Court has mandated this rule, and evidence that is illegally seized must be suppressed. And “suppressed” means “suppressed”; it does not mean that courts may characterize evidence as “suppressed” while, in fact, relying upon that evidence to support its own forfeiture. While I too might wish that suppression of evidence could be less painful to the justice system, it is precisely because of its painfulness that I, as well as others in the majority, have been so concerned about the rule for so long. Where evidence has been illegally obtained, the rule of suppression requires that the legal system be deprived of even the most credible evidence, including whatever “implications” can be drawn from its “surrounding circumstances.” The majority alleviates the costs of suppression, but only by transforming suppression into something other than what it must be.
IV CONCLUSION
On the basis of MCL 333.7521, In re Forfeiture of United States Currency, and the traditional meaning of “suppression,” I would hold that suppressed evidence is admissible in a civil forfeiture proceeding for the limited purpose of establishing its existence as the defendant and the court’s jurisdiction over the property, but that such evidence may not properly be relied on in a substantive fashion to sustain a forfeiture, even when this is done purportedly to assess the “circumstances surrounding the existence” of the evidence, and the “implications” of the evidence. Rather, the trial court must determine whether legally seized evidence, i.e., untainted evidence, is sufficient to sustain the forfeiture. Because the untainted evidence here was not sufficient to support the forfeiture, I would reverse the judgment of the Court of Appeals and vacate the judgment of forfeiture.

 MCL 333.7521(1)(f) provides:
The following property is subject to forfeiture:
(f) Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article that is traceable to an exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article or that is used or intended to be used to facilitate any violation of this article including, but not limited to, money, negotiable instru *475 ments, or securities. To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner’s knowledge or consent. Any money that is found in close proximity to any property that is subject to forfeiture under subdivision (a), (b), (c), (d), or (e) is presumed to be subject to forfeiture under this subdivision. This presumption may be rebutted by clear and convincing evidence.

 The majority argues that LoCicero is not applicable to this case, because LoCicero addressed the exclusionary rule in the context of a criminal proceeding, rather than a civil forfeiture proceeding. I fail to see the slightest relevance in this observation. The fact remains that the evidence in this case was suppressed and that the prosecutor did not challenge this suppression. The only question before this Court concerns the impact of that suppression, an impact that our decision in LoCicero accurately described.

 As the majority correctly notes, the Court of Appeals in In re Forfeiture of United States Currency relied on an erroneous standard of proof; the correct burden of proof is “preponderance of evidence,” not “probable cause.” See People v United States Currency, 158 Mich App 126, 130; 404 NW2d 634 (1986).

 In support of this assertion, the majority cites United States v $242,484 in United States Currency, 389 F3d 1149, 1167 (CA 11, 2004), in which the federal court stated, “[W]e do not take an academic or theoretical approach. Instead, we eschew clinical detachment and use a common sense view to the realities of normal life.” Whatever a “common sense view” may suggest to the majority, this statement is taken entirely out of context. Unlike the instant case, $242,484 in United States Currency involved a lawful search after which the evidence of money was not suppressed. The court there merely addressed the extent to which evidence of money could be considered for the purposes of establishing probable cause that the money was related to illegal drugs. While the federal court’s proposition is commonplace, the majority’s application of this proposition is extraordinary.

 It is not clear whether the majority is suggesting that the suppressed evidence of money was properly admitted because it was used to impeach Smith. The majority simply utters this assertion without any apparent context or purpose. However, even if this evidence were used for such a purpose, it was also used by the trial court, the Court of Appeals, and the majority for obvious non-impeachment purposes to affirmatively support a finding of forfeiture.

 Moreover, the majority fails to apply its own rule in an understandable or consistent manner. On the one hand, that the money was seized in a rental car driven by a low-income driver in a known drug corridor are all circumstances relied on by the majority to sustain the present forfeiture. Ante at 464-472. On the other hand, the majority states that “the state should not be permitted to exploit the search by asking how the money was packaged, or whether evidence of drugs was detected on the money.” Ante at 460. However, the latter are also "circumstances surrounding the property’s existence.” I fail to understand, and the majority does not explain, the basis for differentiating those circumstances that the majority would allow to be considered and those circumstances that it would not. What are the standards for distinguishing between these classes of “circumstances”?

 Apparently, the prosecutor in $639,558, unlike the majority, understood that “suppressed” means “suppressed,” and “excluded” means “excluded,” and thus recognized that the “surrounding circumstances” or “implications” of illegally seized property could not be used to support its forfeiture.

 The majority responds that these cases are relevant because they relate to the prosecutor’s belated argument that the exclusionary rule does not apply to a civil forfeiture proceeding. Ante at 464 n 29. However, the issue of the applicability of the exclusionary rule to a civil forfeiture proceeding is not before this Court; the only issue is whether the suppressed evidence may be used to support its own forfeiture. Thus, the cases strewn throughout this opinion by the majority may be “relevant,” but only to an irrelevant issue.

 Given that this Court is not bound by the decisions of lower federal courts, perhaps the majority might wish to share what it is they find most persuasive in the district court’s analysis.

 That is, because the trial court erred in excluding evidence, the Sixth Circuit had no need to consider whether the trial court also erred in relying on excluded evidence; concomitantly, if the trial court had not erred, it would also have had no need to rely on excluded evidence.

 The majority argues that this dissent’s “reasoning has been rejected” in United States v $493,850 in United States Currency, 2006 US Dist LEXIS 2370 (D Ariz, January 23, 2006). Ante at 462. In that case, the “[cjlaimants argue[d] [that] the Court may not even acknowledge that one of the defendants is money but rather must deal with the defendant money as if it were a ‘widget.’ ” $493,850 in United States Currency, supra at *15. The court held that it
does not believe that exclusion of the cash means the Court must consider the defendant cash as a “widget.” The Court believes it can still take notice of the fact that the defendant is *485 cash. This is obviously stated in the caption of the case. Perhaps the denominations making up the amount and the actual money itself cannot be put into evidence. However, there is no way for the Government to show that a “widget” is the product of a drug transaction and, therefore, the Court does not believe it has to disregard the fact that one of the defendants is cash. [Id. at *15-16.]
$493,850 merely stands for the proposition that the illegally seized cash must be identified as what it is, i.e., that the defendant’s identity need not be obscured or hidden. Moreover, the trial court did not rely on the fact of the money, or any inferences drawn from the amount of money identified as the defendant, in order to support the forfeiture. Rather, it relied exclusively on untainted evidence, including the facts that the claimants met on several occasions with known drug dealers, were negotiating with the drug dealer on price, and the vehicle that the government sought to forfeit was observed by the police at the drug dealer’s home. Nothing in $493,850 refutes what is set forth in this dissent.

 The majority argues that Smith’s “behavior was not ‘ordinary and innocent’ ” if we take into consideration “claimant’s inability to provide a credible explanation for how she came to have such a large amount of cash in a rental car” and “the absence of evidence supporting her explanation for the intended use of such a large quantity of cash,” ante at 470 and 471, “juxtaposed with the testimony of the illegal drug trafficking expert.” Id. Indeed, this is quite true if we are allowed to consider these circumstances. But that, of course, is the nub of the question. Are we allowed to consider these circumstances under the exclusionary rule? I believe not, because such evidence has been made nonexistent under the rule for almost all purposes. Because the majority evaluates the presence of the money in Smith’s car, the amount of the money, and the source and use of the money, it is clearly acting beyond the scope of the exclusionary rule. Credible or not, the trial court could not rely on this evidence to establish that the money was connected to an illegal drug activity. Absent such evidence, Smith resembles any other person who travels from Detroit to Chicago in a rental car.