# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HARVEY BAYLOR III,

Defendant-Appellant.

UNPUBLISHED
October 27, 2015

No. 321301[1]
Wayne Circuit Court
LC No. 13-002503-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TONNIE A. JOHNSON,

Defendant-Appellant.

No. 321520
Wayne Circuit Court
LC No. 13-002503-FC

Before: MURRAY, P.J., and METER and OWENS, JJ.

PER CURIAM.

In Docket No. 321301, defendant Harvey Baylor III appeals as of right his jury-trial convictions of felony murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Baylor was sentenced to life in prison for the felony murder conviction, 225 months to 60 years' imprisonment for the armed robbery conviction, and two years' imprisonment for the felony-firearm conviction. In Docket No. 321520, defendant Tonnie A. Johnson appeals as of right her jury-trial convictions of felony murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; and felony-firearm, MCL 750.227b. Johnson was sentenced to life in prison for the felony murder

---

[1] The appeals were consolidated on August 13, 2014. *People v Baylor*, unpublished order of the Court of Appeals, entered August 13, 2014 (Docket Nos. 321301 & 321520).

-1-

conviction, 225 months to 60 years' imprisonment for the armed robbery conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

This matter arises from the shooting of Kadi Jackson while in his vehicle on June 24, 2012, near the MGM Grand Casino, in the area of Third and Bagley Streets in Detroit.

## I. Docket No. 321302

Baylor contends that the trial court erred in failing to provide the jury with a proper instruction on self-defense. He further asserts that his trial counsel was ineffective for failing to object to the trial court's jury instructions.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). "Where counsel expresses satisfaction with the jury instructions, however, any claim of error is deemed waived, leaving nothing for this Court's review." *People v Galloway*, 307 Mich App 151, 157; 858 NW2d 520 (2014), application for leave held in abeyance ___ Mich ___; 861 NW2d 6 (2015). Baylor requested that the trial court include an instruction to the jury on self-defense. While the trial court included an instruction on self-defense for the charge of second-degree murder, it denied an entitlement to the instruction on the charge of felony murder if the jury determined that Baylor was engaged in a robbery or larceny as part of the offense. In the course of the trial court's explanation of its reasoning, Baylor's attorney concurred. At the completion of the trial court's giving the jury its instructions, Baylor's counsel also indicated that he had no objections to the instructions. The issue of instructional error is waived. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citations and quotation marks omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (citation and quotation marks omitted).

Legal questions pertaining to a claim of instructional error are reviewed de novo, while a trial court's finding that a jury instruction was inapplicable to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *Id*. at 702.

To preserve a claim of ineffective assistance of trial counsel for appellate review, a defendant must move for a new trial or for a *Ginther*[2] hearing. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Because Baylor claims ineffective assistance of counsel for the first time on appeal, the issue is not properly preserved for appellate review.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-2-

court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id.* A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (citation and quotation marks omitted). "Where claims of ineffective assistance of counsel have not been preserved, [this Court's] review is limited to errors apparent on the record." *Id.* (citations and quotation marks omitted).

As noted, Baylor's claim of instructional error is waived premised on counsel's concurrence with the proposed instruction and verbal indication that there were no objections to the instructions as provided by the trial court. See *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011). Regardless, for thoroughness, we provide the following analysis.

The trial court provided instructions to the jury on felony murder and second-degree murder. Following the conclusion of the recitation of the elements of all the charged crimes, the trial court provided an instruction on self-defense in conjunction with the second-degree murder charge. All elements of the offenses charged must be included in the instructions to the jury and the instructions cannot exclude any relevant issues, defenses or theories if supported by the evidence. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). Before the trial court is required to instruct the jury regarding an affirmative defense, a defendant must produce some evidence on all of its elements. *People v Crawford*, 232 Mich App 608, 620; 591 NW2d 669 (1998). "Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002). Failure to instruct the jury regarding a defense will only warrant reversal if a defendant can show that the omission undermined the reliability of the verdict. See *People v Hawthorne*, 474 Mich 174, 184-185; 713 NW2d 724 (2006).

A defendant acts in self-defense when he "honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990). The Michigan Self-Defense Act provides:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . . [t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1)(a).]

A criminal defendant is entitled to a jury instruction only if it is supported by the evidence. See *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Contrary to Baylor's contention, the trial court did not err in failing to provide the self-defense jury instruction in a blanket manner, because he was "engaged in the commission of a crime"—a larceny or armed robbery—at the time he used deadly force.[3] Further, in reviewing the jury instructions in their

---

[3] If he had not been engaged in this crime he would not be convicted of felony-murder.

entirety and context, the instructions provided by the trial court, allowing a self-defense theory with regard to the charge of second-degree murder, adequately served to protect Baylor's rights.

Baylor further argues that he was denied the effective assistance of counsel premised on counsel's failure to object to the instructions provided to the jury. "To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). "With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. The defendant also must overcome the strong presumptions that counsel's conduct [fell] within the wide range of reasonable professional assistance and that counsel's actions were sound trial strategy." *Galloway*, 307 Mich App at 158 (citations and quotation marks omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (citation and quotation marks omitted).

Defense counsel, however, is not required to make a meritless objection. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). Because the instructions provided to the jury sufficiently protected Baylor's rights and were consistent with the law, his counsel cannot be deemed ineffective for failing "to advocate a meritless position." *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

While Baylor's arguments in his Standard 4 Brief on the next (unpreserved) issue are somewhat confusing and convoluted, it appears that he is challenging the effectiveness of his counsel in failing to preclude the amendment of the felony information to include charges of felony murder, armed robbery and felony-firearm. He asserts that defense counsel's representation was below professional norms because of counsel's failure to note or argue certain technical deficiencies in the paperwork involved in amending the information and failure to apprise the trial court of the reasons for the district court's earlier denial of a request to amend the charges.

The initial warrant in this matter was filed on October 25, 2012. For Baylor, the charges included second-degree murder and accessory after the fact, and his status as an habitual offender was identified. A complaint on November 15, 2012, and an information on March 29, 2013, continued with these charges. After the conclusion of the preliminary examination, the prosecutor filed a motion to amend the felony information to add the charges of first-degree or felony murder, armed robbery and felony-firearm, premised on proofs adduced at the examination. On June 6, 2013, the trial court granted the amendment, over objection by Baylor's counsel. In the discussion preceding its decision, the trial court questioned the ability to use Johnson's statement to establish the robbery or larceny element for the felony murder charge. In response, the prosecutor offered the preliminary examination testimony of Stanton Colquitt indicating the victim had, during the events, expressed that he was being robbed and given the license plate number of the vehicle involved. The trial court reviewed the testimony and found it sufficient to establish a robbery component to permit amendment of the information.

In accordance with MCR 6.112(H), "[t]he court before, during, or after trial may permit the prosecutor to amend the information unless the proposed amendment would unfairly surprise or prejudice the defendant." See also *People v Russell*, 266 Mich App 307, 317; 703 NW2d 107 (2005) ("[a] trial court may amend the information at any time during the trial"). It is difficult to ascertain Baylor's actual contention of error because he suggests clerical infirmities, lack of effective objection by his counsel to the amendment and an insufficient basis for the amendment.

Initially, we note that Baylor had sufficient notice of the charges against him; the ruling to amend occurred on June 6, 2013, and trial did not begin until February 24, 2014. Because the amendment adequately informed Baylor of the charges against him and permitted him to develop his defense in accordance with the charges, there was no unfair surprise or prejudice necessitating reversal. MCR 6.112(H); *People v Hunt*, 442 Mich 359, 365; 501 NW2d 151 (1993).

Baylor also asserts various clerical deficiencies, asserting the absence of dates and clerk stamps verifying dates of filing and lack of any delineation of whether copies were original or for a party. First, Baylor makes these allegations without any reference to case law or rules supporting his claim. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority. Defendant's failure to cite any supporting legal authority constitutes an abandonment of this issue." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (citation and quotation marks omitted). Second, a review of the file indicates that the motion to amend the information was stamped by the court clerk as filed on May 24, 2013, and was signed by the prosecutor. The amended information was also dated and signed in the lower court file, as was the order granting the amendment.[4] As such, in this regard, Baylor's contentions are without merit.

Baylor further implies a problem with the filing of the felony information as not having occurred before or on the date of arraignment, contrary to the requirements of MCR 6.112(C). However, the lower court file indicates that the arraignment occurred on March 29, 2013, with the original information filed on that date as well. Consequently any implication of error by Baylor is without merit.

Baylor also asserts that his counsel was ineffective for his inability to preclude the amendment of the information. Baylor acknowledges that defense counsel did object to the amendment, but contends he did not adequately apprise the trial court of the district court's reasons for rejecting the prosecutor's earlier request to amend the charges. The trial court was aware that the district court had previously declined to amend the charges; the court learned of this by way of statements by the prosecutor in open court and the content of the motion to amend. Based on the trial court's review of the preliminary examination transcripts and its independent determination that the testimony elicited from Colquitt supported the amended charges, Baylor is unable to demonstrate that counsel was ineffective for not being able to

---

[4] Although the order could have been worded more clearly, the transcript of the June 6, 2013, hearing makes clear that the court was granting the motion.

preclude an amendment of the information. A trial counsel's lack of success in advocating a particular position or argument is not the equivalent of ineffective assistance. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Baylor attempts to reconfigure his challenge to the amendment of the information in the guise of a claim of prosecutorial misconduct. To this end, Baylor suggests the prosecutor engaged in misconduct by improperly amending the information premised on unreliable information following the conclusion of the preliminary examination.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Although Baylor objected to the amendment of the information, his arguments did not encompass or suggest misconduct by the prosecutor in seeking to procure the amendment. As such, Baylor has failed to preserve the issue of prosecutorial misconduct for appellate review.

"Concerning preserved issues of prosecutorial misconduct, this Court evaluates the challenged conduct in context to determine if the defendant was denied a fair and impartial trial." *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Review of unpreserved issues is limited to ascertaining whether plain error occurred that affected substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In accordance with the Due Process Clause of the Fourteenth Amendment, a criminal defendant must receive "fair notice of the charges against him to permit adequate preparation of his defense." *Koontz v Glossa*, 731 F2d 365, 369 (CA 6, 1984). "This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id*. The Michigan Court Rules provide that "[t]he court before, during, or after trial may permit the prosecutor to amend the information unless the proposed amendment would unfairly surprise or prejudice the defendant." MCR 6.112(H); see also *Russell*, 266 Mich App at 317 ("[a] trial court may amend the information at any time during the trial"). Baylor contends the amendment was unfair because it was premised on unreliable information and constituted surprise.

As discussed in greater detail earlier, amendment of the information occurred after the preliminary examination, but well before the initiation of trial, affording Baylor sufficient time to prepare and execute his defense strategy with regard to the revised charges. In part, Baylor objects to the amendment of the information premised on what he characterizes as unreliable information, referring to alleged hearsay statements of Johnson. While initially, the prosecutor referenced this testimony from the preliminary examination in support of her request to amend the information, the trial court found it inadequate but concurred with the prosecutor's argument that the preliminary examination testimony of Colquitt was sufficient to permit the amendment.

The amended information adequately informed defendant of the charges against him and permitted Baylor to construct his defense accordingly, and there was no unfair surprise or prejudice. MCR 6.112(H); see also *Hunt*, 442 Mich at 365. We find no basis for reversal.

Baylor next contends that the trial court erred in deeming admissible Johnson's statement to Erica Davis and Taneeka Hamilton. He asserts that the statement was not admissible as substantive evidence and violated both the Confrontation Clause and the requirements of MRE 804(b)(3). He further argues that counsel was ineffective for failing to challenge the admissibility of the statement, failing to call Johnson as a hostile witness, and failing to seek a limiting instruction regarding the use of the testimony.

"A trial court's decision to admit evidence is reviewed for a clear abuse of discretion. Evidentiary error will not merit reversal unless it involves a substantial right and, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003) (citation omitted). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Unpreserved claims of ineffective assistance of counsel are reviewed for errors apparent on the record. *Lopez*, 305 Mich App at 693.

At trial, Davis and Hamilton both testified regarding a statement made to them by Johnson, indicating her culpability in Jackson's murder and the events that led to the homicide. Baylor was subsequently identified by Hamilton in a photographic lineup as an individual who she "thought would kill me."

The Confrontation Clause provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *People v Taylor*, 482 Mich 368, 375; 759 NW 2d 361 (2008), quoting US Const, Am VI. In general, testimonial hearsay is barred under the Confrontation Clause "unless the declarant is unavailable to testify at trial and the defendant had the prior opportunity to cross-examine the declarant, regardless of whether the statements are otherwise deemed reliable under the rules of evidence." *People v Lonsby*, 268 Mich App 375, 390; 707 NW2d 610 (2005). "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *People v Henry (After Remand)*, 305 Mich App 127, 153; 854 NW2d 114 (2014) (citations and quotation marks omitted). In addition, the Michigan Supreme Court has held that when,

> as here, the declarant's inculpation of an accomplice is made in the context of a narrative of events, at the declarant's initiative without any prompting or inquiry, [and] . . . as a whole is clearly against the declarant's penal interest and as such is reliable, the whole statement—including portions that inculpate another—is admissible as substantive evidence at trial pursuant to MRE 804(b)(3). [*People v Poole*, 444 Mich 151, 161; 506 NW2d 505 (1993), abrogated in part by *Taylor*, 482 Mich at 370.]

Because Johnson's statement to Davis and Hamilton was nontestimonial, it does "not implicate the Confrontation Clause." *Taylor*, 482 Mich at 374. Further, Johnson testified at trial and was subject to cross-examination regarding the statement.

Admissibility of the statement as substantive evidence is, therefore, subject to analysis with regard to the rules of evidence. "Hearsay" is defined as a "statement, other than the one

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). In general, hearsay is inadmissible except as permitted by the rules of evidence. MRE 802; *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

The statements of Davis and Hamilton were deemed admissible against Baylor under MRE 804(b)(3) on the assumption that Johnson would be unavailable at trial as a non-testifying codefendant. Unavailability is defined in MRE 804(a)(1) to encompass "situations in which the declarant . . . is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement[.]" MRE 804(b)(3) provides the following regarding the definition of a statement against interest:

> *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far intended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The statement was clearly against Johnson's interest. Johnson did, however, elect to testify at trial. Nevertheless, if the admissibility of the statement pursuant to MRE 804(b)(3) is rendered inapplicable, given the ultimate availability of Johnson, the statement was admissible in accordance with MRE 803(24).

A hearsay statement not admissible under one of the established exceptions to the hearsay rule may still be deemed admissible under MRE 803(24). Specifically, MRE 803(24) provides, in relevant part, that the following may be admitted:

> A statement not specifically covered by any of the foregoing [hearsay] exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

In evaluating whether a statement has the necessary indicia of reliability required under MRE 803(24), a trial court is to consider "the totality of the circumstances surrounding the making of the statement," which may include the following factors:

> (1) the spontaneity of the statements; (2) the consistency of the statements; (3) lack of motive to fabricate or lack of bias; (4) the reason the declarant cannot testify; (5) the voluntariness of the statements, i.e. whether they were made in response to leading questions or made under undue influence; (6) personal knowledge of the declarant about the matter on which he spoke; (7) to whom the

statements were made, e.g. a police officer who was likely to investigate further and (8) the time frame within which the statements were made. The court may not consider whether evidence produced at trial corroborates the statement. [*People v Katt*, 248 Mich App 282, 295; 639 NW2d 815 (2001), aff'd 468 Mich 272 (2003) (citations and quotation marks omitted).]

Johnson's statement to Davis and Hamilton was spontaneous in that it was unsolicited. The statement was made to both Davis and Hamilton simultaneously. There was no demonstration of a reason for Johnson to fabricate, given the unsolicited and voluntary nature of the statement. In her statement to Davis and Hamilton, Johnson implicated herself and not Baylor as the shooter. The only bias for Baylor was Johnson's attribution of the plan to engage in a robbery to him. When the statement was offered, Johnson, as a codefendant, was deemed unavailable to testify. Clearly, as an occupant of the vehicle and having acknowledged her presence during the events, Johnson had the requisite personal knowledge. Johnson made the statement to a friend and acquaintance, further indicating its trustworthiness. See *People v Barrera*, 451 Mich 261, 274; 547 NW2d 280 (1996). Although the statement was made over two weeks after the event, it was not so removed in time from the occurrence to be deemed overly problematic due to inaccuracy of memory.

Johnson's statement was offered as evidence of a material fact with regard to the larceny component underlying the charge of felony murder. MRE 803(24)(A). "A material fact is [a] fact that is significant or essential to the issue or matter at hand." *People v Katt*, 468 Mich 272, 292; 662 NW2d 12 (2003) (citation and quotation marks omitted). Although there was other evidence of the larceny (by way of Colquitt's testimony), the statement was more probative on this issue than the other evidence, given the details in Johnson's statement and given that Johnson's statement was against her own interest. MRE 803(24)(B). In addition, the purpose underlying the exceptions to hearsay, and the interest of justice, were served by admission of the statement into evidence. MRE 803(24)(C). Finally, Baylor had pretrial notice of the prosecutor's intent to introduce the statement. See MRE 803(24). We find no basis for reversal.

Baylor further contends that his trial counsel was ineffective for failing to preclude the admission of these statements based on their violation of the Confrontation Clause and to assure their use only for purposes of impeachment rather than substantive evidence.

Initially, it is important to note that defense counsel did object, on more than one occasion, to the admission of this evidence, albeit unsuccessfully. Merely because counsel was not successful in his efforts does not equate to a deficiency in his performance. In addition, certain of Baylor's assertions of error, such as his contention that the statement violated the Confrontation Clause and his contention regarding the failure to call his codefendant Johnson as a hostile witness, are without merit. Similarly, at the time discussion ensued regarding the use of the statement pursuant to MRE 804(b)(3), there was no indication that counsel knew that Johnson would ultimately testify at trial. "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). No ineffective assistance of counsel is apparent.

-9-

Johnson contends that the trial court erred in denying her counsel's peremptory challenge to a white, male juror, Ronald Raspbury, based on counsel's perception of the juror's wealth and her desire to not have a "wealthy" individual on the jury. The prosecutor observed a pattern in the use of peremptory challenges by counsel to exclude white, male jurors. The trial court permitted all of the peremptory challenges by Johnson's counsel, with the exception of one individual, indicating a level of disgust at the bias of Johnson's counsel in suggesting the propriety of excluding a person perceived to be more financially endowed from service on the jury.

This Court reviews de novo issues regarding a trial court's proper application of the law. *People v Goldston*, 470 Mich 523, 527-528; 682 NW2d 479 (2004). A trial court's decision on the ultimate question of discriminatory intent under *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), is reviewed for clear error. *Hernandez v New York*, 500 US 352, 364-365; 111 S Ct 1859; 114 L Ed 2d 395 (1991); *United States v Hill*, 146 F3d 337, 341 (CA 6, 1998); see also *People v Bell*, 473 Mich 275, 282; 702 NW2d 128 (2005), opinion corrected on reh 474 Mich 1201 (2005).

A trial court may empanel a jury of 14 members. MCL 768.18; MCR 6.411. If in excess of 12 jurors are selected, in accordance with MCR 6.411, before deliberations begin "the names of the jurors must be placed in a container and names drawn from it to reduce the number of jurors to the number required to decide the case." During the process of jury selection, a defendant is entitled to exercise peremptory challenges. MCR 6.412(E).

"The purpose of voir dire is to give counsel the opportunity to develop a rational basis for exercising both challenges for cause and peremptory challenges." *People v Furman*, 158 Mich App 302, 322; 404 NW2d 246 (1987). A peremptory challenge is defined as "[o]ne of a party's limited number of challenges that do not need to be supported by a reason unless the opposing party makes a prima facie showing that the challenge was used to discriminate on the basis of race, ethnicity, or sex." *Black's Law Dictionary* (9th ed). In *Bell*, 473 Mich at 294-295, the Michigan Supreme Court noted that "[b]ecause the right to a peremptory challenge in Michigan is not provided by the Michigan Constitution but, rather, by statute and court rule, we conclude, as did the United States Supreme Court, that the right is of non-constitutional dimension."

Johnson's counsel's explanation for attempting to exercise a peremptory challenge was as follows:

> And the thing that I didn't like about him yesterday, and I still don't like about him today, is that—and you may think I'm crazy for this, but this is the truth; and if you want to make him stay you can—I think that he's rich, and I don't want rich people on my jury.

Johnson was permitted to make a further record of her objections to the juror. The trial court rejected Johnson's explanation of her challenge as a form of "bigotry."

Ultimately, it is irrelevant whether the trial court properly denied Johnson's peremptory challenge of this juror because he was excused as an alternate juror and never participated in

deliberations regarding Johnson's guilt or innocence.[5]  Hence, even if the trial court erred in denying Johnson's peremptory challenge, she cannot demonstrate either outcome-determinative prejudice or a miscarriage of justice.  See *id*. at 295.

Johnson also contends that there was insufficient evidence to sustain her convictions under an aiding-and-abetting theory.  Although admittedly present for the events that occurred, Johnson asserts, in part, that the prosecution could not prove the requisite malice necessary to sustain her convictions.

Challenges to the sufficiency of the evidence are reviewed de novo.  *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007).  The evidence is reviewed in the "light most favorable to the prosecution" to "determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."  *Id*. (citation and quotation marks omitted).  "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses."  *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

As discussed in *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007):

The elements of first-degree felony murder are:  (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b)].  [Citations and quotation marks omitted.]

MCL 767.39 indicates that a defendant may be convicted if they aided or abetted in the commission of a charged crime:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

The elements necessary for a conviction under an aiding-and-abetting theory are:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.  [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (citations and quotation marks omitted).]

---

[5] We note that neither party seems to recognize or be aware of the fact that the disputed juror was dismissed from the jury before deliberations ensued.

-11-

"An aider and abettor's state of mind may be inferred from all the facts and circumstances." *Carines*, 460 Mich at 758 (citations and quotation marks omitted).

"To place the issue of aiding and abetting before a trier of fact, the evidence need only tend to establish that more than one person committed the crime, and that the role of a defendant charged as an aider and abettor amounts to something less than the direct commission of the offense." *People v Vaughn*, 186 Mich App 376, 382; 465 NW2d 365 (1990). "The phrase 'aids or abets'" encompasses "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004), habeas relief granted on other grounds sub nom *Harris v Booker*, 738 F Supp 734 (ED Mich, 2010). "In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *Id*. at 71. "[W]hether the defendant performed acts or gave encouragement that assisted" "must be determined on a case-by-case basis . . . ." *Id*. (internal citations and quotation marks omitted).

Johnson does not deny her presence with Baylor in Detroit or that there was some form of interaction with Jackson. Johnson denies that she was aware of Baylor's plans to meet with Jackson until the incident occurred and asserted a lack of wrongdoing by herself or Baylor, asserting that all of the aggressive acts originated with Jackson and that Baylor was merely defending himself and his passengers from Jackson's attack with his vehicle. In contrast, Davis and Hamilton testified that Johnson informed them of a plan she participated in with Baylor to come to Detroit to rob Jackson to recoup losses she incurred from a failed drug deal. Johnson told Davis and Hamilton that she drew a gun on Jackson to secure the drugs he brought to the parking structure and claimed that she discharged the weapon at Jackson during the chase that ensued. Colquitt verified that he provided Jackson with the narcotics shortly before Jackson's death, transporting and exchanging the drugs at the MGM Grand Casino. Colquitt was contacted by Jackson, indicating he had been robbed and providing the license plate for the vehicle rented by Baylor. The history of telephone calls and text messages pulled from Jackson's cellular telephone evinced multiple communications between Jackson and Baylor and Jackson and Colquitt on the day of the homicide. Similarly, an analysis of the telephone records of Johnson and Baylor confirmed their travel together during the time leading up to and after the homicide.

Based on this testimony, there was more than sufficient evidence to convict Johnson as either the principal or an aider and abettor of the crimes charged. Johnson was aware of the plan to rob Jackson and used a weapon to threaten Jackson to assist in effectuating the crime. "Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon." *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014).

> Indeed, because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind. . . . Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt. [*Id*. (citation and quotation marks omitted).]

While Johnson's testimony conflicted with that of other witnesses testifying at trial, resolution of the conflict was within the purview of the jury. As discussed in *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013):

> We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt. We do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence, and the elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence. It is the jury's duty to determine the weight to be accorded any inferences. [Citations and quotation marks omitted.]

The testimony and evidence adduced at trial was sufficient to sustain Johnson's convictions.

Johnson next argues that the trial court erred in excluding from admission before her jury Baylor's statement to police indicating that he discharged the weapon at Jackson. Johnson suggests that the preclusion of this statement denied her the right to present a defense. Baylor did not testify at trial and, as such, Johnson asserts that his unavailability made the hearsay exception of MRE 804(b)(3) applicable; she additionally relies on MRE 803(24).

At trial, the prosecutor contended that the statement by Baylor was an assertion of his theory of self-defense and, therefore, was not a statement against penal interest and lacked the requisite guarantees of trustworthiness. The trial court concurred and denied Johnson's request that the statement be admitted for her jury. Portions of the statement were read into the preliminary examination transcript, wherein Baylor asserted that Jackson was the aggressor and threatening Baylor and his passengers and that he drove off attempting to evade Jackson. Baylor admitted to drawing and firing one shot out the rear passenger window of his vehicle toward Jackson after his vehicle had been struck by Jackson's vehicle.

The trial court did not err in denying Johnson's request that Baylor's statement to the police be admitted for her jury. The statement was inadmissible because it was not a statement against penal interest under MRE 804(b)(3). Baylor did not acknowledge or admit to engaging in a robbery or larceny of Jackson, asserting that he was purchasing a room at a casino, for which he paid Jackson. Baylor made no mention of a drug purchase from Jackson, but rather asserted that Jackson became irate during their conversation, arguing with Johnson, and that Baylor left due to threats by Jackson. The shooting, according to Baylor, was an attempt to defend himself and his passengers from Jackson's overt efforts to endanger them through using his vehicle to repeatedly chase and strike the Volkswagen Baylor was driving. To be construed as a statement against penal interest, a statement "must actually assert the declarant's own culpability to some degree—it cannot be a statement merely exculpating the accused." *Barrera*, 451 Mich at 271.

In addition, the statement was not admissible under MRE 803(24) based on the lack of "guarantees of trustworthiness . . . Indeed, the statement at issue was not spontaneous, it was made to a police officer as part of an interview, and Baylor had a clear motive to fabricate. See, generally, *Katt*, 248 Mich App at 295.

Johnson argues that the trial court's admission of statements from Jackson to Colquitt that he was being robbed, giving the license plate number of the perpetrator and requesting Colquitt to call police constituted error because it violated the restrictions of *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 157 (2004). The trial court deemed the statements admissible under MRE 803(2) as an excited utterance.

To preserve an issue regarding the allegedly improper admission of evidence for appeal, a party generally must object at the time of admission. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). At the beginning of trial, Johnson objected to the use of statements by Jackson to Colquitt indicating he was robbed. Specifically, Johnson's counsel stated, "Just so my objection is clear. I'm not saying that it's hearsay. I'm saying it violates *Crawford*. I know it's not hearsay. It's definitely an excited utterance, but I can argue that it's not. What we're arguing is that it violates *Crawford*." The trial court ruled the statement admissible as an exception to the hearsay rule. The issue is sufficiently preserved for appellate review with regard to Johnson's contention that it constituted a *Crawford* violation. Because trial counsel affirmatively acknowledged that the statements comprised "an excited utterance" and, therefore, an exception to hearsay, allegations of error regarding admission under MRE 803(2) are waived. Acknowledgement by counsel that the testimony was admissible as an exception to the hearsay rule constituted a waiver and, thereby, extinguished any error. *Carter*, 462 Mich at 215.

As discussed by this Court in *People v Jordan*, 275 Mich App 659, 662; 739 NW2d 706 (2007), citing *Crawford*, 541 US at 68:

> [T]he Confrontation Clause bars testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford* also held that state hearsay rules could govern the admissibility of nontestimonial hearsay without offending the Confrontation Clause. *Id*. Thus, the Confrontation Clause does not bar the testimony at issue unless the statements of the declarant were "testimonial."

As noted in *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006):

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Johnson implies that Colquitt acted as an agent of the police based on Jackson's request that he relay the information by calling 9-1-1. However, Colquitt did not relay the information to the police at the time, indicating that when he attempted to phone 9-1-1 he "[d]idn't reach the operator" and that he did not reattempt a contact based on another witness at the scene having already contacted police. In addition, given the prior friendship between Jackson and Colquitt it is unlikely Jackson conveyed this information based on viewing Colquitt as an ostensible agent of the police, but rather as a friend who would be concerned and try to assist. See *Ohio v Clark*, ___ US ___, ___; 135 S Ct 2173, 2182; 192 L Ed 2d 306 (2015) ("Courts must evaluate

challenged statements in context, and part of that context is the questioner's identity. . . . Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers."); see also *Jordan*, 275 Mich App at 663-664. Finally, Jackson's statements were not testimonial in that they were made "under circumstances objectively indicating that the primary purpose . . . [was] to enable police assistance to meet an ongoing emergency." *Davis*, 547 US at 822. We find no basis for reversal.

Finally, Johnson asserts that her trial counsel was ineffective for failing to investigate and present testimony from other res gestae witnesses, who she contends would have provided corroboration for her testimony regarding the events. On appeal, Johnson fails to identify the omitted witnesses by name and we are left to presume that she is referring to the other two passengers in the Volkswagen.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). To overcome this presumption, a defendant is required to demonstrate that he or she was prejudiced by counsel's failure. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

As noted, Johnson fails to specifically identify the witnesses defense counsel should have called. She fails to indicate what testimony they would have provided but instead makes a cursory allegation that it would have supported her version of how the events unfolded. Johnson provides no affidavits summarizing the witnesses' proposed testimony to support her assertion that their testimony would have been favorable to her. She provides nothing to verify that defense counsel did not attempt to contact or interview these witnesses or, alternatively, that counsel did reach them and determined that their testimony would not be helpful or beneficial to Johnson. As a result, there is no record evidence that any of the alleged witnesses would have given testimony favorable to Johnson or that her counsel did not attempt to contact the witnesses. Therefore, Johnson has not demonstrated that the failure to call these witnesses or to present this evidence deprived her of a substantial defense. The burden was on Johnson to establish the factual predicate for her ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Johnson's unsupported allegations are insufficient to demonstrate that she was denied the effective assistance of counsel.[6]

---

[6] In addition, the officer in charge of the investigation, Patricia Little, testified regarding her inability to locate or contact the people who had been in the back of the vehicle, despite undertaking various efforts. Little indicated that her conclusion was that "they didn't want to come forward . . . ."

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Donald S. Owens