CORRIGAN, C.J.
In this case, we must determine whether to recognize a “good-faith” exception to the exclusionary rule. In United States v Leon, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), the United States Supreme Court interpreted US Const, Am IV and adopted a good-faith exception to the exclusionary rule as a remedy for unreasonable searches and seizures. Under Leon, the exclusionary rule does not bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant ultimately found to have *526 been defective. The exclusionary rule in Michigan is a judicially created remedy that is not based on the text of our constitutional search and seizure provision, Const 1963, art 1, § 11. Indeed, records of the 1961 Constitutional Convention evidence an intent on behalf of the people of Michigan to retreat from the judge-made exclusionary rule consistent with the United States Supreme Court’s interpretation of the Fourth Amendment in Leon. We therefore adopt the good-faith exception to the exclusionary rule in Michigan. The purpose of the exclusionary rule is to deter police misconduct. That purpose would not be furthered by excluding evidence that the police recovered in objective, good-faith reliance on a search warrant. We thus reverse the circuit court’s ruling suppressing the evidence seized pursuant to the defective warrant in this case.
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
On September 23, 2001, twelve days after the terrorist attacks of September 11, 2001, police officers observed defendant collecting money on a street corner. He was wearing a shirt with the word “Fireman” written on it and holding a fireman’s boot. He also carried a firefighter’s helmet and jacket. Defendant told a police officer that he was collecting money for the firefighters in New York, but denied being a firefighter himself. The officers confiscated $238 from defendant along with the firefighter paraphernalia, but did not immediately arrest him.
Thereafter, the officers successfully sought a search warrant for defendant’s home. The warrant listed the address as “29440 Hazelwood, Inkster” and authorized the police to seize the following items:
*527 Police/Fire scanner(s) or radios, fire, EMS, Police equipment. Any and all emergency equipment, bank accounts, currency, donation type cans or containers, any and all other illegal contraband.
The search uncovered more firefighter paraphernalia, a firearm, and marijuana. The prosecutor charged defendant with being a felon in possession of a firearm, MCL 750.224f; possession of a firearm during the attempt or commission of a felony, MCL 750.227b; two counts of possession of marijuana, MCL 333.7403(2)(d); and larceny by false pretenses, MCL 750.218.
Defendant filed a motion to suppress evidence, asserting both federal and state grounds, US Const, Am IV; Const 1963, art 1, § 11, which the circuit court granted. The court ruled that the search warrant affidavit did not connect the place to be searched with defendant and did not state the date that the police observed defendant soliciting money. The court thus concluded that the affidavit did not establish probable cause for the issuance of a warrant and dismissed the felon in possession, felony-firearm, and marijuana possession charges.[1]
The Court of Appeals denied the prosecutor’s delayed application for leave to appeal. Thereafter, we granted leave to appeal, limited to the issue whether this Court should adopt a good-faith exception to the exclusionary rule.[2]
II. STANDARD OF REVIEW
Whether Michigan should recognize a good-faith exception to the exclusionary rule is a question of law that *528 this Court reviews de novo. People v Gonzalez, 468 Mich 636, 641; 664 NW2d 159 (2003).
III. ANALYSIS
A. THE FEDERAL GOOD-FAITH EXCEPTION
In Weeks v United States, 232 US 383; 34 S Ct 341; 58 L Ed 2d 652 (1914), the United States Supreme Court held that, in a federal prosecution, the Fourth Amendment barred the use of evidence obtained pursuant to an illegal search or seizure. The Court reasoned:
If letters and private documents can thus be [illegally] seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. [Id. at 393.]
In Mapp v Ohio, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), the United States Supreme Court extended the Weeks exclusionary rule to the states. The Court reasoned that because the Fourth Amendment right is enforceable against the states by virtue of the Due Process Clause of the Fourteenth Amendment, the same sanction, i.e., the exclusion of illegally obtained evidence, must apply to state prosecutions as well as to federal prosecutions. Id. at 655, 660.
In Leon, the Supreme Court adopted a good-faith exception to the exclusionary rule. In that case, the Court rejected the notion that “the exclusionary rule is a necessary corollary of the Fourth Amendment.” Leon, supra at 905-906. The Court stated that the exclusionary rule is not derived from the text of the Fourth Amendment:
*529 The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure “[works] no new Fourth Amendment wrong.” United States v Calandra, 414 US 338, 354 [94 S Ct 613; 38 L Ed 2d 561] (1974). The wrong condemned by the Amendment is “fully accomplished” by the unlawful search or seizure itself, ibid., and the exclusionary rule is neither intended nor able to “cure the invasion of the defendant’s rights which he has already suffered.” Stone v Powell [428 US 465, 540; 96 S Ct 3037; 49 L Ed 2d 1067 (1976)] (WHITE, J., dissenting). The rule thus operates as “a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.” United States v Calandra, supra at 348. [Id. at 906.]
The Court clarified that whether the exclusion of evidence is an appropriate sanction in a particular case is a separate issue from whether police misconduct violated a person’s Fourth Amendment rights. The Court further stated that whether invocation of the “judicially created remedy” is appropriate involves weighing the costs and benefits in each particular case. Id. at 906-907. The primary benefit of the exclusionary rule is that it deters official misconduct by removing incentives to engage in unreasonable searches and seizures. The costs, however, include preventing the use in the prosecutor’s case-in-chief of trustworthy evidence obtained in reliance on a search warrant subsequently found to be defective. Id.
The Court expressed concern that rigid adherence to the exclusionary rule, particularly when law enforcement officers act in good faith or when their transgressions are minor, “offends basic concepts of the criminal justice system” and breeds contempt for the law and the *530 administration of justice. Id. at 907-908. Thus, the Court recognized the potential for the exclusionary rule to impede the truth-seeking function of the judiciary, resulting in guilty parties either evading punishment altogether or receiving favorable plea bargains. The Court concluded that “the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.” Id. at 922.
Central to the Court’s reasoning was the exclusionary rule’s purpose of deterring police misconduct. The Court opined that no deterrence occurs when police reasonably rely on a warrant later found to be deficient. Id. at 916-919.
In short, where the officer’s conduct is objectively reasonable, “excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.” [Id. at 919-920, quoting Stone, supra at 539-540 (White, J., dissenting).]
The Court stated that this is particularly true when a law enforcement officer acts within the scope of, and in objective, good-faith reliance on, a search warrant obtained from a judge or magistrate. Excluding the evidence recovered in such cases would have no deterrent effect on the officer. Id. at 920-921.
The Court rejected the notion that a purpose of the exclusionary rule is to rectify the errors of judges and magistrates. It stated that no evidence exists that judges and magistrates are inclined to ignore the Fourth Amendment or that the extreme sanction of *531 exclusion is necessary for “lawlessness” among judges and magistrates. Id. at 916. The Court could discern no basis for believing that exclusion of evidence would have a significant deterrent effect on an issuing judge or magistrate because they are not “adjuncts to the law enforcement team.” Id. at 917.
The Court concluded that the exclusionary rule should be employed on a case-by-case basis and only where exclusion would further the purpose of deterring police misconduct. The Court emphasized, however, that a police officer’s reliance on a magistrate’s probable cause determination and on the technical sufficiency of a warrant must be objectively reasonable. Evidence should also be suppressed if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard of the truth. Further, the Court stated that the good-faith exception does not apply where the magistrate wholly abandons his judicial role or where an officer relies on a warrant based on an affidavit “ ‘so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.’ ”[3] Id. at 923, quoting Brown v Illinois, 422 US 590, 610; 95 S Ct 2254; 45 L Ed 2d 416 (1975) (Powell, J., concurring in part).
B. THE EXCLUSIONARY RULE IN MICHIGAN
Five years after the United States Supreme Court issued its opinion in Weeks, this Court decided People v *532 Marxhausen, 204 Mich 559; 171 NW 557 (1919). In Marxhausen, this Court examined the language of Michigan’s then-existing search and seizure provision, Const 1908, art 2, § 10:
The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation.
This Court stated that the above provision was “in effect the same provision found in the Fourth Amendment to the Federal Constitution.”[4] Marxhausen, supra at 562. This Court then reviewed federal case law, including Weeks, and concluded that Michigan would follow the federal exclusionary rule. Id. at 568-574. Thus, long before the Mapp Court required the states to follow the Weeks exclusionary rule, this Court elected to follow the exclusionary rule in Michigan. This Court did not, however, base its decision on the language of the Michigan Constitution. In fact, nowhere in Marxhausen did this Court opine that the language of our Constitution required the exclusion of evidence seized in violation of our constitutional provisions. Rather, the Marxhausen Court followed the exclusionary rule as a matter of policy preference in favor of the federal law.[6] Thus, similar to the Weeks exclusionary rule, our exclusionary rule in Michigan is purely a common-law, judge-made rule.
*533 Notwithstanding the Leon Court’s adoption of the federal good-faith exception to the exclusionary rule, to date, this Court has not recognized a similar state exception. The United States Supreme Court has stated, however, that the states are free to impose higher standards on searches and seizures than the Fourth Amendment requires. Cooper v California, 386 US 58, 62; 87 S Ct 788; 17 L Ed 2d 730 (1967). Thus, the question arises whether Const 1963, art 1, § ll[6] provides more search and seizure protection than does its federal counterpart.
*534 In interpreting our Constitution, we are not bound by the United States Supreme Court’s interpretation of the United States Constitution, even where the language is identical.[7] Harvey v Michigan, 469 Mich 1, 6 n 3; 664 NW2d 767 (2003). Conversely, we are free to interpret our Constitution consistent with the United States Supreme Court’s interpretation of the United States Constitution unless a compelling reason precludes us from doing so. As this Court stated in Sitz v Dep’t of State Police, 443 Mich 744, 758; 506 NW2d 209 (1993), however, a “ ‘compelling reason’ should not be understood as establishing a conclusive presumption artificially linking state constitutional interpretation to federal law.” Rather, we must determine what law “ ‘the people have made.’ ” Id. at. 759, quoting People v Harding, 53 Mich 481, 485; 19 NW 155 (1884). The following factors are relevant in determining whether a compelling reason exists to interpret the Michigan Constitution and the United States Constitution differently:
1) [T]he textual language of the state constitution, 2) significant textual differences between parallel provisions of the two constitutions, 3) state constitutional and common-law history, 4) state law preexisting adoption of the relevant constitutional provision, 5) structural differences between the state and federal constitutions, and 6) matters of peculiar state or local interest. [People v Collins, 438 Mich 8, 31 n 39; 475 NW2d 684 (1991).]
The above factors are also helpful in determining the intent of the ratifiers with respect to our state constitutional provisions.
*535 In People v Nash, 418 Mich 196; 341 NW2d 439 (1983) (opinion by BRICKLEY, J.), this Court examined the circumstances surrounding the creation of Const 1963, art 1, § 11 to determine whether the provision provided a higher degree of search and seizure protection than the Fourth Amendment. See also Sitz, supra at 752-757. In Nash, this Court stated:
The focus of the Michigan Constitutional Convention of 1961 was on the effect of Mapp on the third sentence of Const 1908, art 2, § 10.[8] The Committee on Declaration of Rights, Suffrage, and Elections proposed that the final sentence of Const 1908, art 2, § 10 be deleted in favor of the phrase “Evidence obtained in violation of this section shall not be used except as authorized by law.” The committee reasoned that the broad holding of Mapp may have invalidated the final sentence of Const 1908, art 2, § 10. The merits of that sentence were also considered by the committee. The committee added the phrase “except as authorized by law” because:
“Should the definition of the federal limits imposed on the States with respect to the admissibility of evidence change in the future, the Michigan Legislature and the Michigan courts could incorporate, in statute and court decisions, those rules with respect to the admissibility of *536 evidence which reflect the opinion of the Legislature and the Michigan courts as to what ought to constitute sound practice in this State, subject only to the continuing recognition of the limits set by federal constitutional supremacy.” Committee Proposals and Reports, Constitutional Convention 1961, Supporting Report, Committee Proposal No 15, pp 7, 10.
It therefore appears that the committee was attempting to allow for the possibility of a less stringent application of the exclusionary rule if allowed by federal law, rather than attempting to strengthen Michigan search and seizure protection.
The debates of the committee of the whole at the convention considered both the merits of, and the effect of Mapp on, Const 1908, art 2, § 10. See 1 Official Record, Constitutional Convention 1961, pp 464-484, 488-533, 674-688. The view that Mapp was limited to searches of dwellings and that a limitation on the exclusionary rule was proper on the merits carried the day. Attempts to unite Michigan and United States search and seizure law by adopting the exact language of the Fourth Amendment in the proposed Michigan Constitution were defeated. Instead, the anti-exclusionary-rule proviso of Const 1908, art 2, § 10 was amended back in to the proposed constitution. 1 Official Record, Constitutional Convention 1961, pp 531-688. Ultimately, language substantially similar to that of Const 1908, art 2, § 10, as amended, was adopted by the convention and recommended to the people.
The convention’s address to the people stated that proposed Const 1963, art 1, § 11 was “No change from Sec. 10, Article II, of the present constitution except for improvement in phraseology.” 2 Official Record, Constitutional Convention 1961, pp 3364. Indeed, the common understanding of the people upon reading the proposed constitutional provision could be nothing but the belief that the search and seizure provision of the new constitution represented no change. There had been no substantive alterations. There is no indication that in readopting the language of Const 1908, art 2, § 10 in Const 1963, art 1, § 11 the people of this state wished to place restrictions on law *537 enforcement activities greater than those required by the federal constitution. In fact, the contrary intent is expressed. [Nash, supra at 211-213; quoted also at Sitz, supra at 754-756 (emphasis added).]
The Nash Court concluded:
Though the people of the State of Michigan have corrected this Court when they have believed it to have gone too far, the historical general power of this Court to construe the constitutional provision relating to searches and seizures has not been removed. The history of Const 1963, art 1, § 11, and its plain import, however, suggest that its further expansion, with the concomitant expansion of the exclusionary rule to enforce it, should occur only when there is a compelling reason to do so. [Nash, supra at 214.]
Thus, it is clear from the records of the constitutional convention that the people favored less stringent search and seizure protections than required under the Fourth Amendment at that time. Approval of the antiexclu-sionary clause evidenced the people’s intent to move away from the exclusionary rule of Marxhausen and Mapp as a matter of state constitutional law and to restrict application of the judicially created, remedy.
The text of Const 1963, art 1, § 11 itself is consistent with the above conclusion that the people intended to retreat from the exclusionary rule. Const 1963, art 1, § 11 provides:
The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous *538 weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.
The antiexclusionary clause, i.e., the last sentence quoted above, precludes this Court from excluding from evidence any of the enumerated items. This clause does not constrain this Court’s authority regarding items not specifically enumerated in the provision. In other words, the directive of the people that this Court may not exclude certain evidence does not require the exclusion of all other evidence. The antiexclusionary proviso should be viewed not as a ratification of the common-law exclusionary rule regarding items enumerated in the proviso, but, rather, as a restriction on this Court’s authority to apply the judge-made rule to those enumerated items. Because the proviso does not restrict this Court’s authority regarding evidence not enumerated in the antiexclusionary clause, this Court remains free to repudiate or modify the exclusionary rule by virtue of the fact that it is a judicially created rule, not a constitutional rule.
Under the above authority, we are free to retain, modify, or retreat from the Marxhausen rule altogether. Because we find the reasoning of Leon persuasive, we choose to embrace Leon as a matter of our interpretive right under the common law and retreat from the judicially created exclusionary rule announced in Marx-hausen. The goal of the exclusionary rule, as expressed in Leon, is to deter police misconduct. Leon, supra at 906-907; see also People v Hawkins, 468 Mich 488, 510-511; 668 NW2d 602 (2003); People v Sobczak-Obetts, 463 Mich 687, 711 n 19; 625 NW2d 764 (2001). Thus, the goal of the exclusionary rule would not be furthered where police officers act in objectively reasonable good-faith reliance on a search warrant.
*539 Our dissenting colleagues rely on several pre-Leon cases in contending that deterring police misconduct is not the only purpose of the exclusionary rule. Post at 562. The United States Supreme Court in Leon, however, stated that “the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Leon, supra at 916. Further, the Court directed “that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.” Id. at 918. Thus, in determining whether to apply the exclusionary rule, the proper focus is on the deterrent effect on law enforcement officers, if any. “If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments.” Id. Thus, while the exclusionary rule may have had other purposes ascribed to it before Leon, the Leon Court effectively narrowed the focus of the rule as a remedy for police misconduct.
Further, the Leon Court rejected the notion that the exclusionary rule is an effective tool in remedying the errors of judges and magistrates and deterring violations of the Fourth Amendment generally:
To the extent that proponents of exclusion rely on its behavioral effects on judges and magistrates in these areas, their reliance is misplaced. First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.
*540 Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate. Many of the factors that indicate that the exclusionary rule cannot provide an effective “special” or “general” deterrent for individual offending law enforcement officers apply as well to judges or magistrates. And, to the extent that the rule is thought to operate as a “systemic” deterrent on a wider audience, it clearly can have no such effect on individuals empowered to issue search warrants. Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected significantly to deter them. [Leon, supra at 916-917.]
The reasoning of Leon is persuasive. If judges and magistrates are “neutral and detached,” the exclusion of evidence would have no deterrent effect on their practices. Because the exclusionary rule would not deter judicial errors, the purpose of the rule would not be served by requiring exclusion in all cases.[9]
*541 Neither the text of Const 1963, art 1, § 11 nor the history of the provision ascribes broader protections to our constitutional provision than the Fourth Amendment requires. In fact, examination of the 1961 Constitutional Convention reveals that the delegates favored a less stringent application of the exclusionary rule at that time, but felt constrained by Mapp to limit the antiexclusionary clause to searches occurring outside the curtilage of a dwelling. Nash, supra at 212-213. As this Court recognized in Nash, there is no indication that by adopting Const 1963, art 1, § 11 and adhering to the language of Const 1908, art 2, § 10, as amended, the people sought to place restrictions on law enforcement activity greater than those under the Fourth Amendment. “In fact, the contrary intent is expressed.” Id. at 213. The intent of the delegates in 1961 is consistent with the United States Supreme Court’s adoption of the good-faith exception in Leon, and the text of the Constitution is consistent with recognizing that exception. Because the exclusionary rule in Michigan is a judicially created, nonbinding rule, we interpret Const 1963, art 1, § 11 consistent with the Leon Court’s interpretation of the Fourth Amendment and adopt the good-faith exception to the exclusionary rule in Michigan.[10]
*542 C. APPLICATION OF THE GOOD-FAITH EXCEPTION IN THIS CASE [11]
Applying the good-faith exception to the exclusionary rule in this case, we conclude that the circuit court erred by suppressing the marijuana, firearm, and firefighter paraphernalia. The police officers’ reliance on the district judge’s determination of probable cause and on the technical sufficiency of the search warrant was objectively reasonable. The information in the affidavit was not false or misleading, and the issuing judge did not “wholly abandonO” her judicial role. See Leon, supra at 923. A review of the affidavit and search warrant can lead to no other logical conclusion than that the address listed was that of defendant.[12] Indeed, *543 it probably did not even occur to the magistrate or executing officers that the address was not defendant’s address. Further, the affidavit was not “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Id,., quoting Brown, supra.
Although the warrant was later determined to be deficient, excluding the evidence recovered in good-faith reliance on the warrant would not further the purpose of the exclusionary rule, i.e., to deter police misconduct. Because the exclusionary rule should be employed on a case-by-case basis and only when exclusion would further the purpose of the rule, it should not be employed in this case.
IV CONCLUSION
We adopt the good-faith exception to the exclusionary rule in Michigan. The purpose of the rule, i.e., deterring police misconduct, would not be served by applying the exclusionary rule in this case because the police officers’ good-faith reliance on the search warrant was objectively reasonable. Thus, the officers committed no wrong that exclusion of the evidence would deter. Accordingly, we reverse the circuit court’s ruling suppressing the evidence and remand for reinstatement of the charges against defendant.
*544 Weaver, Taylor, Young, and Markman, JJ., concurred with Corrigan, C.J.

 The court did not dismiss the misdemeanor charge of larceny hy false pretenses.

 467 Mich 939 (2003).

 In Arizona v Evans, 514 US 1, 14-16; 115 S Ct 1185; 131 L Ed 2d 34 (1995), the Supreme Court followed Leon and held that a court employee’s clerical error did not warrant the exclusion of evidence. Such a remedy would not have deterred future errors by court personnel or the behavior of the arresting officer who reasonably relied on the erroneous computer record.

 US Const, Am IV provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

 In this vein, the Marxhausen Court stated:
*533 An examination of many cases decided by the United States Supreme Court involving both the Fourth and Fifth Amendments satisfies us that the rule announced by that court will be reached by careful consideration of three cases decided by that court, and only three; that by a careful consideration of these three cases we will be able to clearly understand the rule laid down by that, the court of last resort of the nation, and the reason for the rule. These cases are Boyd v United States, 116 US 616 (6 Sup Ct 524 [29 L Ed 746 (1886)]); Adams v New York, 192 US 585 (24 Sup Ct 372 [48 L Ed 575 1904)]); and Weeks lsupra.
We are impressed, however, that a careful consideration of the Boyd Case in connection with the Adams Case and the decisions of the State courts, some of which are cited above, but many of which are not, taken in the light of what was said by the court in the Weeks Case, demonstrates that in the main the United States Supreme Court and the courts of last resort of the various States are in accord, and that the Boyd Case does not conflict, as its critics claim, with the holdings of the many State courts. [Marxhausen, supra at 568, 571.]

 Const 1963, art 1, § 11 provides:
The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.

 It is not necessary that the wording of our Constitution be different from that of the United States Constitution, however, in order for this Court to interpret our Constitution different from the United States Supreme Court’s interpretation of the United States Constitution. People v Smith, 420 Mich 1, 7 n 2; 360 NW2d 841 (1984).

 Const 1908, art 2, § 10 was the predecessor of Const 1963, art 1, § 11 and was “in effect the same provision found in the Fourth Amendment to the Federal Constitution.” Marxhausen, supra at 562. In 1936, the people ratified an amendment of Const 1908, art 2, § 10 that added a third sentence commonly referred to as the “antiexclusionary clause.” Sitz, supra at 753. That clause stated:
Provided, however, That the provisions of this section shall not be construed to bar from evidence in any court of criminal jurisdiction, or in any criminal proceeding held before any magistrate or justice of the peace, any firearm, rifle, pistol, revolver, automatic pistol, machine gun, bomb, bomb shell, explosive, blackjack, slungshot, billy, metallic knuckles, gas-ejecting device, or any other dangerous weapon or thing, seized by any peace officer outside the curtilage of any dwelling house in the state. [Id. at 753-754.]

 The dissent also criticizes our decision to depart from precedent by not following our decision in People v Bloyd, 416 Mich 538; 331 NW2d 447 (1982), post at 560, in which this Court declined to recognize a good-faith exception to the exclusionary rule. Our decision in Bloyd, however, predated Leon and declined to adopt a good-faith exception without any analysis of the issue.
Our dissenting colleagues further contend that our decision “forsake[s] [our] commitment to our citizens,” “fail[s] to resist the lure of expediency,” “discard[s] decades of sound analysis,” and “treatfs] our Constitution as an impediment.” Post at 558, 560, 564. The dissent fails to acknowledge, however, the very high cost of the exclusionary rule, including preventing the prosecutor’s use of trustworthy evidence obtained in good-faith reliance on a search warrant because of a subsequently discovered technical defect in the warrant. See Leon, supra at 906-907. Excluding the use of such evidence impedes, rather than promotes, the truth-seeking function of the judiciary and thereby hinders public confidence in the integrity of the judicial process. While the dissent *541 favors such a result, we believe that the high cost of the exclusionary rule exacts too great a toll on our justice system. See Leon, supra at 907-908, 922.

 By adopting the good-faith exception to the exclusionary rule in Michigan, we are not overruling Sitz, which did not involve the scope of the exclusionary rule but which instead interpreted Const 1963, art 1, § 11 as affording greater substantive protection than does the Fourth Amendment in the context of automobile seizures. Sitz, supra at 776. Rather, we are overruling several Court of Appeals cases in which the Court declined to recognize a good-faith exception. See, e.g., People v Hill, 192 Mich App 54, 56; 480 NW2d 594 (1991); People v Jackson, 180 Mich App 339, 346; 446 NW2d 891 (1989).
*542 The dissent notes that other jurisdictions have rejected the good-faith exception. See post at 560-561 n 2. While the manner in which other states have construed their respective constitutions and statutes is entirely irrelevant to our constitutional analysis, we note that numerous jurisdictions have adopted a good-faith exception. See e.g., State v Eason, 245 Wis 2d 206; 629 NW2d 625 (2001); McDonald v State, 347 Md 452; 701 A2d 675 (1997); Ex parte Morgan, 641 So 2d 840 (Ala, 1994); Crayton v Commonwealth, 846 SW2d 684 (Ky, 1992); People v Camarella, 54 Cal 3d 592; 286 Cal Rptr 780; 818 P2d 63 (1991); Bernie v State, 524 So 2d 988 (Fla, 1988); State v Saiz, 427 NW2d 825 (SD, 1988); United States v Edelen, 529 A2d 774 (DC App, 1987); State v Wilmoth, 22 Ohio St 3d 251; 490 NE2d 1236 (1986); State v Ebey, 491 So 2d 498 (La App, 1986); State v Sweeney, 701 SW2d 420 (Mo, 1985); McCrary v Commonwealth, 228 Va 219; 321 SE2d 637 (1984). Still other jurisdictions have adopted the good-faith exception to the exclusionary rule by statute, including Arizona (Ariz Rev Stat 13-3925), Colorado (Colo Rev Stat 16-3-308), Illinois (725 111 Comp Stat 5/114-12(b)(l)), Indiana (Ind Code 35-37-4-5), and Texas (Tex Code Crim Proc art 38.23(b).

 The prosecutor concedes that the search warrant was not based on probable cause. Thus, the search and seizure was, in fact, unconstitutional.

 The dissent, post at 566 n 7, likens this case to Groh v Ramirez, 540 US 551,_; 124 S Ct 1284, 1290; 157 L Ed 2d 1068 (2004), in which the search warrant failed altogether to describe the “things to be seized.” In *543 that case, the United States Supreme Court stated that “even a cursory reading of the warrant... would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal.” Id. at 1294. The search warrant in the instant case does not contain a “glaring deficiency” such as that present in Groh. Indeed, the warrant in Groh would not even apprise police officers of which items to seize, thereby impeding the very purpose of the search. As we have previously recognized, an examination of the warrant on which the officers relied in this case can lead to no logical conclusion other than that the premises to be searched belonged to defendant.