# STATE OF MICHIGAN

# COURT OF APPEALS

In re KIRSCHNER, Minors.

UNPUBLISHED
April 3, 2018

No. 339578
Muskegon Circuit Court
Family Division
LC No. 14-043847-NA

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Respondent mother appeals by right from the order of disposition regarding the placement of the minor children.[1] We affirm.

In April 2017, the Department of Health and Human Services (DHHS) petitioned the trial court to remove the minor children from respondents' care. The petition's allegations stem from two interactions in March 2017 between Children's Protective Services (CPS), law enforcement, and respondents. First, on March 18, 2017, mother called 911 to report that father was suicidal and had threatened to cut himself with a knife in front of the minor children. When law enforcement arrived, father was sweating profusely and speaking incoherently. The police officers removed father from the household and took him to the hospital emergency room where it was discovered that father had ingested an unknown amount of Adderall and had not slept in more than three days. Following this incident, CPS attempted to schedule home visits with the family. Mother canceled two appointments, and neither respondent would answer phone calls from the CPS caseworker.

On March 31, 2017, CPS caseworker Melissa Howell went to respondents' home. Father refused to allow Howell into the home to see mother and the minor children and told her that the allegations against him were false. Howell later returned with law enforcement and her supervisor. According to the petition, father appeared intoxicated, was shaking uncontrollably, had difficulty completing thoughts, and was generally belligerent to Howell and law enforcement. The petition alleged that, at this time, mother confirmed that father needed mental health treatment, that he had threatened to kill himself in the presence of the minor children on multiple prior occasions, and that his mental health issues caused significant problems in their

---

[1] Respondent father is not party to this appeal.

relationship. Mother denied having safety concerns for the minor children and refused Howell's proposed safety plan recommending that father leave the home. At this time, the police officers entered respondents' home, removed the minor children, and brought them to the police station. At the police station, mother agreed to a safety plan providing for the placement of the minor children with their maternal aunt. On April 3, 2017, the trial court entered an order allowing the DHHS to take the minor children into protective custody.

Mother subsequently moved the trial court to dismiss the petition. Mother alleged that the police officers' entry into respondents' home on March 31, 2017, without a warrant violated her Fourth Amendment rights. She argued that the statements made by the older child during an April 4, 2017 forensic interview, included in the DHHS's amended petition, should be suppressed as the fruit of the police officers' unconstitutional entry into respondents' home.[2] Mother also alleged that the allegation that mother had not signed a safety plan was untrue: she had ultimately signed a safety agreement on March 31, 2017, placing the minor children with their maternal aunt. Mother argued that without the objectionable statements there would be no probable cause to support the petition.

The trial court held a hearing regarding mother's motion to dismiss on June 12, 2017. The trial court held that the police officers complied with MCR 3.963(A)(1),[3] which allows a police officer to remove a child from the child's surroundings without a court order. The trial court held that the police officers had "reasonable grounds" to enter respondents' home without a warrant because "this is the same guy that [the police officers] took a call on a few days earlier who was threatening physical harm to himself in the presence of his children . . . the same person who is now being somewhat in some manner obstructionist today." The trial court further held that the minor children were at an immediate risk of harm and that their removal from the home was necessary to protect their health and safety. Accordingly, the trial court concluded that the

---

[2] "Under the criminal law, the exclusionary rule not only extends to evidence seized in violation of the Constitution, but also to "evidence of materials and testimony that are the products or indirect results of an illegal search, the so-called 'fruit of the poisonous tree' doctrine." People v Stevens, 460 Mich 626, 633-634; 597 NW2d 53, (1999), citing Wong Sun v United States, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963)."

[3] MCR 3.963(A)(1) provides:

> An officer may without court order remove a child from the child's surroundings and take the child into protective custody if, after investigation, the officer has reasonable grounds to believe that a child is at substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety. If the child is an Indian child who resides or is domiciled on a reservation, but is temporarily located off the reservation, the officer may take the child into protective custody only when necessary to prevent imminent physical damage or harm to the child.

police officers' actions did not violate respondents' Fourth Amendment rights and denied mother's motion for dismissal of the petition.

Later, mother admitted to the allegations in the petition subject to her ability to raise her argument regarding the alleged Fourth Amendment violation on appeal. The trial court assumed jurisdiction over the minor children in June 2015.

On appeal, mother again argues that the trial court should have dismissed the DHHS's petition because the police officers' warrantless entry into respondents' home on March 31, 2017 violated the Fourth Amendment. We decline to address this constitutional claim because even if mother's Fourth Amendment rights were violated, she is not entitled to relief.

In the present case, mother argues that law enforcement violated her Fourth Amendment rights on March 31, 2017, when they entered her home without a warrant and removed the minor children. Mother's home was undoubtedly a constitutionally protected area, and the police officers needed a warrant or exigent circumstances to justify an exception to the warrant requirement to lawfully enter her home to search for evidence of a crime. *People v Davis*, 442 Mich 1, 9-10; 497 NW2d 910 (1993). An exception to the warrant requirement exists if the police officers possessed an objectively reasonable belief that the minor children were imminently threatened with serious injury and that immediate aid was necessary. *Id*. at 25; see also *People v Lemons*, 299 Mich App 541, 545-546; 830 NW2d 794 (2013) (discussing the emergency-aid exception). It is undisputed that the police officers had neither a warrant to enter the home nor a written pickup order as specified under MCR 3.963(B). Their handling of the situation appears, however, to comport with MCR 3.963(A)(1), and could reasonably be construed to be consistent with the emergency-aid exception. Nonetheless, we need not decide whether the emergency-aid exception applies to a CPS matter because even if mother's Fourth Amendment rights were violated, the violation was harmless, and mother is entitled to no relief.

We affirm the trial court's ultimate disposition denying mother's request to dismiss the petition. See *Neville v Neville*, 295 Mich App 460, 470; 812 NW2d 816 (2012) (stating that this Court will affirm a correct result regardless of whether the proper reasoning was employed to reach it). To the extent that mother argues that the child's statements made during the forensic interview should be suppressed as fruit of the poisonous tree, we note that mother has not provided any authority demonstrating that the exclusionary rule should apply in this case. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Further, " '[i]t is not enough for an appellant . . . to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Consequently, we conclude that mother's argument has no supporting basis, nor can we determine any basis for applying the exclusionary rule in child protective proceedings.

The exclusionary rule is a judicially created remedy designed to deter future police misconduct. *People v Goldston*, 470 Mich 523, 529; 682 NW2d 479 (2004). The application of the exclusionary rule has been restricted to situations where its remedial objectives are believed

to be most effective. *Arizona v Evans*, 514 US 1, 11; 115 S Ct 1185; 131 L Ed 2d 34 (1995). Consequently, where the exclusionary rule does not appreciably deter police misconduct, its use is unwarranted. *Id*. As noted, in this case, mother has not provided any authority either establishing that the exclusionary rule applies in child protective proceedings or demonstrating that the application of the exclusionary rule in child protective proceedings would appreciably deter police misconduct. See *In re Martin*, 316 Mich App 73, 85 n 8; 896 NW2d 452 (2016) (noting that other jurisdictions have refused to apply the exclusionary rule in child protective proceedings because it may hinder the state's interest in protecting children). We hold that the exclusionary rule does not apply in child protective proceedings; consequently, any potential violation of mother's Fourth Amendment rights in this case must be deemed harmless and without remedy.

We affirm.

/s/ Jane E. Markey
/s/ Michael F. Gadola