# Court of Appeals, State of Michigan

## ORDER

Michael J. Talbot, Chief Judge, acting under MCR 7.211(E)(2), orders:

The opinions in the following appeals are hereby AMENDED to correct a clerical error in the date of issuance. The date on the opinions is corrected to read April 10, 2018.

**334631 People of MI v Maurice Larnell Glover**

**335396 People of MI v Robert Daren Hale**

**336245 People of MI v Toriono Kent**

**336893 Goldcorp Inc v Varoujan M Basmajian**

**337595 Jeffery Beck v Alpine Shredders Limited**

**337951 Teddy 23 LLC v Department of Treasury**

In all other respects, the opinions remain unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

APR 1 0 2018
_____
Date

_____
Chief Clerk

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 9, 2018

Plaintiff-Appellee,

v

No.  335396
Oakland Circuit Court
LC No.  2015-256959-FC

ROBERT DAREN HALE,

Defendant-Appellant.

Before:  SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317; operating under the influence causing death, MCL 257.625(4); operating while license suspended, revoked, or denied causing death, MCL 257.904(4); receiving or concealing stolen property (motor vehicle),[1] MCL 750.535(7); and failure to stop at the scene of an accident resulting in death, MCL 257.617.  The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to concurrent terms of 53 to 80 years' imprisonment for second-degree murder, 19 to 50 years' imprisonment for operating under the influence causing death, 19 to 50 years' imprisonment for operating while license suspended, revoked, or denied causing death, 6 to 30 years' imprisonment for receiving or concealing stolen property, and 6 to 30 years' imprisonment for failure to stop at the scene of an accident resulting in death.  We affirm.

## I. FACTS

Shortly after 7:00 a.m. on September 13, 2015, defendant was driving a white truck that had been stolen the evening before.  He proceeded southbound on Woodward Avenue at a high rate of speed and ran a red light at an intersection, striking a vehicle driven by Peter Whittaker.  Whittaker was killed instantly.  Defendant ran from the scene and was followed by a witness who saw him get into a silver car driven by another man.  Defendant was later located and arrested.  A crack pipe was found in the truck defendant was driving at the time of the accident.  A blood draw performed on defendant approximately three hours after the accident showed

---

[1] Defendant pleaded no contest to receiving or concealing a stolen motor vehicle on the first day of trial.

cocaine in his system. Defendant moved to suppress the results of his blood test results, but the trial court denied the motion.

## II. SUPPRESSION OF BLOOD DRAW RESULTS

On appeal, defendant first argues that the trial court erred when it denied his motion to suppress the results of his blood draw because the affidavit for the search warrant was insufficient. We disagree.

This Court reviews a trial court's ruling at a suppression hearing de novo. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). We review the trial court's findings of fact for clear error. *Id*. "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*.

The United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. The Michigan Constitution also provides, "No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation." Const 1963, art 1, § 11.

A magistrate may only issue a search warrant when " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017), quoting *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). This Court reviews a magistrate's decision to issue a search warrant by asking "whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). "A magistrate's finding of probable cause and his or her decision to issue a search warrant should be given great deference and only disturbed in limited circumstances." *Franklin*, 500 Mich at 101. However, there are " 'exceptional circumstances' " when a magistrate's search warrant may be dispensed with, such as, when a search warrant is defective because it is insufficient. *Id*. at 101-102 (citation omitted).

When a trial court determines that a defendant has established a "substantial preliminary showing of a deliberate falsehood or reckless disregard for the truth by the affiant" in the search warrant affidavit, and the allegedly false statement was necessary to a finding of probable cause, the trial court holds an evidentiary hearing pursuant to *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978). *Franklin*, 500 Mich at 94-95. This same standard is used to determine whether a search warrant is invalid. *Id*. at 104. "On this same basis, the defendant may then be entitled to have the warrant voided (when the deliberate falsehood or reckless disregard for the truth is established by a 'preponderance of the evidence' and the affidavit's remaining content is insufficient to establish probable cause)." *Id*. at 104 (citation omitted).

This Court focuses on the facts and circumstances supporting the magistrate's determination of probable cause when reviewing the issuance of a search warrant. *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006). The affidavit for the search warrant must include facts that are within the affiant's knowledge, rather than mere conclusions or

beliefs. *Id*. "The affiant may not draw his or her own inferences, but rather must state matters that justify the drawing of them." *Id*. It is presumed that affidavits supporting search warrants are valid. *People v Mullen*, 282 Mich App 14, 23; 762 NW2d 170 (2008). When reviewing an affidavit, this Court must read it in a " 'common sense and realistic manner,' not a crabbed or hypertechnical manner." *Id*. at 27 (citation omitted).

Generally, unconstitutionally seized evidence must be excluded from trial. *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). " 'Exclusion of improperly obtained evidence serves as a deterrent to police misconduct, protects the right to privacy, and preserves judicial integrity.' " *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009), quoting *People v Brown*, 279 Mich App 116, 127; 755 NW2d 664 (2008). However, when police act "within the scope of, and in objective, good-faith reliance, on a search warrant obtained from a judge or magistrate," evidence seized pursuant to a warrant lacking probable cause is not suppressed. *People v Goldston*, 470 Mich 523, 530; 682 NW2d 479 (2004). Whether the police acted in good faith is determined by a standard of objective reasonableness. *United States v Leon*, 468 US 897, 922; 104 S Ct 3405; 82 L Ed 2d 677 (1984). The exclusionary rule is applied on a case-by-case basis and when it would deter police misconduct. *Goldston*, 470 Mich at 531. If the issuing magistrate "is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard fof the truth," the evidence must be suppressed. *Id*.

First and foremost, we agree with the trial court that the search warrant was factually unsupported on the element of "under the influence." There was, indeed, a wholesale absence of factual support for that element in the affidavit. Nevertheless, there has been no allegation that the police did not act "within the scope of, and in objective, good-faith reliance" on the search warrant obtained from the magistrate," such that the evidence seized pursuant to the warrant lacking probable cause is not suppressed. *Goldston*, 470 Mich 530. Moreover, defendant has based his suppression argument on a claim that the search warrant was insufficient because some of the statements included therein were inaccurate and misleading. The statements in the affidavit that defendant challenges on appeal are:

> Lameka Thomas informed affiant that she personally observed said subject [indiscernible] [i]nvolved in traffic crash and run on feet E/B [sic: eastbound] towards Sanford and then N/B [sic: northbound] through yards before losing sight of them [sic][.]
>
> [Defendant] was subsequently identified by witness who picked him out.

The first sentence is handwritten by Deputy Matthew Steele on the lines provided in the affidavit form. The second sentence is handwritten beneath these lines. The second sentence originally read, "[defendant] was subsequently identified by witness who picked him *up*," and the magistrate crossed out "up," and typed in "out," in the revised version of the affidavit that she signed. Deputy Steele initialed this change.

Thomas testified at the *Franks* hearing that she saw defendant get out of the white truck and start running, and then she lost sight of him as he ran in between houses. Deputy Steele testified that he included the first sentence noted above in the affidavit based on this information

provided by Thomas. There is no inaccuracy in this statement based on the testimony at the *Franks* hearing.

Deputy Steele testified at the *Franks* hearing that he learned from the Waterford Police Department that defendant's brother, Victor Hale, was the owner of the silver car that picked defendant up from near the accident scene, and defendant's brother gave the other officers the address where defendant was located. Deputy Steele initially wrote the second challenged sentence as "[defendant] was subsequently identified by witness who picked him *up*," based on the information he obtained from the Waterford Police Department, who learned this information from defendant's brother. The sentence as it was originally written by Deputy Steele is also supported by his testimony at the *Franks* hearing, although it is not clear from the face of the affidavit that "witness" in the second statement refers to defendant's brother, rather than Thomas. Deputy Steele testified that the magistrate changed "up" to "out" in the sentence "for clarification," but he did not recall the substance of their conversation related to this change. It is not clear why the magistrate made this change as it actually confuses the matter rather than providing clarification.

The trial court concluded that although it was not clear from the face of the affidavit that information was drawn from two witnesses rather than all information being taken from Thomas, there was still "no evidence of willful omission or crafty circumvention." As the trial court explained, Deputy Steele was "compacting" the identities of Thomas and defendant's brother, and should have included a "transitional phrase to apprise the reader" that the information in the first sentence was provided by Thomas, and the information in the second sentence was provided by defendant's brother. The trial court characterized Deputy Steele's actions as "hasty," but not knowingly false or in reckless disregard of the truth. We agree with the trial court's analysis.

The evidence does not demonstrate that Deputy Steele included a deliberate falsehood in the affidavit or acted in reckless disregard for the truth. *Franklin*, 500 Mich at 94-95. He testified that the first challenged sentence of the affidavit was based on information provided by Thomas, and the second challenged sentence was based on the identification of defendant by defendant's brother to the Waterford police. When reading these sentences separately, and in a commonsense rather than a hypertechnical way, Deputy Steele's explanation of the information is clear. When read separately, the sentences do not necessarily establish that "witness" in the second sentence refers to Thomas. The trial court found that Deputy Steele's testimony was honest and not ill-motivated. This Court gives deference to the trial court's determination regarding witness credibility. *Galloway*, 259 Mich App at 638. Because there is no evidence of deliberate falsehood or reckless disregard for the truth, the trial court did not err in finding that the exclusionary rule applied to permit admission of defendant's blood test results, despite the affidavit's failure to establish probable cause related to the intoxication elements of defendant's charged offenses. There is no indication in the record why the discovery of the crack pipe in the white truck driven by defendant at the scene of the accident was not included in the affidavit. Exclusion of the blood test results, however, would not serve the purpose of deterring police misconduct, as Deputy Steele acted in haste, but not in bad faith.

## III. PRIOR BAD ACTS EVIDENCE

Next, defendant argues on appeal that the trial court committed error requiring reversal when it allowed the admission of evidence concerning an August 28, 2015 traffic stop involving defendant, because it was propensity evidence that directly led to defendant's convictions of second-degree murder and operating under the influence causing death. The prosecution had moved to admit "other acts" of defendant that had occurred on August 28, 2015, pursuant to MRE 404(b). The trial court determined that only certain of the proposed evidence would be admitted, and entered an order to that effect:

> 1) The People are allowed to elicit testimony that the defendant's driver's license was suspended on August 28, 2015[,] and police officers told the defendant [that] his license was suspended.
>
> 2) The People are allowed to elicit testimony that police officers found drug paraphernalia in the defendant's vehicle. This evidence is admissible to Count [2] [operating under the influence causing death] only.

At trial, defense counsel orally moved for reconsideration regarding this order, but the trial court denied reconsideration.

It is within the trial court's discretion whether to admit evidence, and this Court will only reverse a trial court's decision on such an issue where there has been a clear abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). An abuse of discretion occurs when the trial court's decision falls " 'outside the range of principled outcomes.' " *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010), quoting *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). A trial court's decision to grant or deny a motion for reconsideration is also reviewed for an abuse of discretion. *People v Walters*, 266 Mich App 341, 350; 700 NW2d 424 (2005).

> MRE 404(b)(1) provides:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The following factors must be present for the trial court to admit other acts evidence:

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b)[.]" Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674

NW2d 366 (2004), quoting *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

The prosecution has the burden of establishing the relevance of the prior act evidence to prove a fact within one of the exceptions to the general exclusionary rule of MRE 404(b). *Knox*, 469 Mich at 509. " 'Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence.' " *Id.*, quoting *Crawford*, 458 Mich at 387. If the only relevance of the prior acts evidence demonstrates the defendant's character or propensity to commit the crime, the evidence cannot be admitted. *Knox*, 469 Mich at 510.

The prosecution argues that it did not offer the prior bad acts evidence under a character or propensity theory, but rather, that the evidence demonstrated defendant's knowledge that his license was suspended, his identity as the driver of the white truck, and lack of mistake. These are proper purposes for admission pursuant to MRE 404(b).

Regarding relevancy, MRE 402 provides that "[a]ll relevant evidence is admissible," unless it is otherwise deemed inadmissible. "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Crawford*, 458 Mich at 387. The prosecution asserts that the traffic stop evidence was relevant because defendant pleaded not guilty, and therefore, the prosecution had to prove all elements of the offenses, including identity, knowledge, and lack of mistake and here, the prosecution had to prove that defendant was the driver of the white pickup truck, and that defendant had knowledge that his license was suspended, on September 13, 2015. It is unclear, however, how the traffic stop evidence is relevant to the issues of identity, knowledge, and lack of mistake pursuant to MRE 402.

There is no doubt that defendant drove the white pickup truck, hit Whittaker's vehicle resulting in Whittaker's death, and fled the scene. Several witnesses identified him, and defense counsel stipulated at trial that defendant was the responsible driver. Similarly, defense counsel stipulated that defendant's driver's license was suspended, and that he was aware of this fact. Testimony related to a search of defendant's license and prior notice from the Secretary of State was also admitted at trial. Although evidence that defendant was pulled over in August 2015 while driving on a suspended license with drug paraphernalia in his car may demonstrate lack of mistake because defendant drove on a suspended license with drug paraphernalia in his car two weeks later, all of the other evidence in the record undoubtedly demonstrated defendant's guilt on these issues. The prior traffic stop evidence was simply irrelevant.

The evidence also was of limited probative value. The prosecution was required to demonstrate that the probative value of the prior acts evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. *Knox*, 469 Mich at 509, quoting *VanderVliet*, 444 Mich at 74-75. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial court noted that the traffic stop prior acts evidence was "not rendered inadmissible from an analysis of [MRE] 403." The trial court did not expand further on its reasoning. Based on a review of the record, the evidence of the August 28, 2015 traffic stop was not highly probative of defendant's involvement in the charged crimes. It demonstrated defendant's involvement in prior instances of driving while his license was suspended, and driving under the influence of a controlled substance. As argued by defendant, this appears to be propensity evidence that defendant is a bad man who drives under the influence of narcotics, which, is unfairly prejudicial to defendant. Moreover, in terms of identity and knowledge of driving on a suspended license, it was cumulative evidence. Defendant's identity was established by witness identification, as well as matching the clothing that defendant was wearing to the clothing found in the garbage bag at Boal's house, and the clothing worn by defendant in the surveillance footage. Thus, the prosecution did not establish that the probative value of the traffic stop evidence substantially outweighed the danger of unfair prejudice.

The admission of the traffic stop evidence, however, was limited by several jury instructions and, therefore, was harmless error. Before Officer Michael Harris testified, the court told the jury:

> As to the August [28], 2015, evidence, you may only think about whether this evidence tends to show that the [d]efendant had knowledge that his operator's license was suspended on September 13, 2015, or that the [d]efendant knowingly possessed or used drug paraphernalia on September 13, 2015.

Officer Harris testified that he performed a traffic stop of defendant on August 28, 2015, a LEIN search indicated that defendant's license was suspended, Officer Harris informed defendant that his license was suspended, and a crack pipe and white residue were found in the car. During the final jury instructions, the court modified the jury instruction according to defense counsel's requests, and read the following version to the jury:

> You have heard evidence that was introduced to show the [d]efendant committed other acts on August 28, 2015, for which he is not on trial.
>
> If you believe this evidence, you must be very careful only to consider it for Counts 2 and 3 only. A couple of "onlys" there.
>
> * * *
>
> As to the August [28], 2015, evidence, you may only think about whether this evidence tends to show that the [d]efendant had knowledge that his operator's license was suspended on September 13, 2015, or that the [d]efendant knowingly possessed drug paraphernalia on September 13, 2015. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the [d]efendant is a bad person or that he is likely to commit crimes. You must not convict the [d]efendant here because you think he is guilty of other bad

conduct. All the evidence must convince you beyond a reasonable doubt that the [d]efendant committed the alleged crimes or you must find him not guilty.

Thus, it is clear that the trial court took many efforts and appeased defense counsel's requests to provide proper limiting instructions to the jury regarding the other acts evidence. It is presumed that jurors follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant argues on appeal that the admission of this evidence directly led to his convictions for second-degree murder and operating while intoxicated causing death. Defendant does not, however, explain how this evidence directly led to his second-degree murder conviction when the jury was allowed to consider the other acts evidence for Count 2, operating under the influence causing death, pursuant to the trial court's original order and the limiting instructions. And, the evidence presented at trial overwhelmingly supported defendant's guilt. Therefore, although the prosecution did not meet its burdens in admitting the traffic stop evidence pursuant to MRE 404(b), its admission was harmless error as there was substantial other evidence on which to convict defendant.

IV. SENTENCING

Lastly, defendant argues on appeal that his sentence for second-degree murder was unreasonable, disproportionate, and cruel and/or unusual punishment. We disagree.

This Court reviews a sentence that was imposed pursuant to the sentencing guidelines to determine whether the sentence is reasonable. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). A sentence is reasonable if it is proportionate to the seriousness of the circumstances of the offense and the offender. *People v Steanhouse*, 500 Mich 453, 475; 902 NW2d 327 (2017). The "key test" of a reasonable sentence "is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990), abrogation recognized by *Steanhouse*, 500 Mich at 459-460. This Court reviews the trial court's determination of a reasonable sentence for an abuse of discretion. *Steanhouse*, 500 Mich at 471.

Because defendant failed to preserve his claim by objecting to his sentence as cruel and/or unusual punishment, this Court reviews defendant's constitutional challenge for plain error affecting defendant's substantial rights. *People v Henry (After Remand)*, 305 Mich App 127, 152; 854 NW2d 114 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met[:] (1) an error must have occurred; (2) the error was plain; (3) and the plain error affected substantial rights, i.e., the defendant was prejudiced (the defendant generally must show that the error affected the outcome of the lower court proceedings)." *People v Barber*, 255 Mich App 288, 296; 659 NW2d 674 (2003). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*.

Defendant was sentenced as a fourth habitual offender, which requires a 25-year minimum sentence. MCL 769.12(1)(a). For second-degree murder, the sentencing guidelines range was calculated at 365 to 1200 months or life imprisonment. The minimum sentence is

-8-

approximately 30 years and 5 months' imprisonment. Defense counsel requested a sentence of 25 years' imprisonment according to the 25-year minimum required as a fourth habitual offender. The prosecutor asserted that the guidelines were proportional. Defendant was sentenced to 53 to 80 years' imprisonment for second-degree murder. Defendant does not challenge on appeal the sentences he received for his four other convictions. Defendant argues that his sentence for second-degree murder was unreasonable and disproportionate because it was much higher than the 25-year minimum required as a fourth habitual offender. Defendant's sentence, however, was not a departure sentence. Defendant's minimum sentence of 53 years' imprisonment for second-degree murder falls within the sentencing guidelines range of 365 to 1200 months. "[A] sentence within the guidelines range is presumptively proportionate." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Therefore, defendant's sentence for second-degree murder was not disproportionate or unreasonable.

Defendant also argues that his sentence for second-degree murder constitutes cruel and/or unusual punishment. The Michigan Constitution prohibits cruel *or* unusual punishment. Const 1963, art 1, § 16. The United States Constitution prohibits cruel *and* unusual punishment. US Const, Am VIII. "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Bowling*, 299 Mich App 552, 557-558; 830 NW2d 800 (2013). As noted above, defendant's minimum sentence of 53 years' imprisonment for second-degree murder is not a departure from the guidelines range of 365 to 1200 months. "A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *Bowling*, 299 Mich App at 558. To overcome the presumption that a sentence is proportionate, the defendant "must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id.*, quoting *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

Defendant has not overcome the presumption of proportionality. Defendant merely argues on appeal that his sentence as a fourth habitual offender is disproportionate because it does not meet the proportionality standard set forth in *Milbourn*. "[A]n appellant may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Bowling*, 299 Mich App at 559-560. Defendant simply asserts that the 25-year minimum would have been proportionate, and notes his age at the time of sentencing (43 years old). Defendant's arguments and reasons do not constitute an "unusual circumstance" sufficient to overcome the presumption of proportionality. *Id.* at 558. Rather, the record is clear that defendant was a fourth habitual offender, he had 17 prior felonies and 20 prior misdemeanors, he was on parole at the time of the accident, and the evidence demonstrated that he was driving at excessive speeds under the influence of cocaine when he ran a red light and collided with another vehicle, resulting in the victim's death.

"Because defendant has not overcome the presumption of proportionality, and because a proportionate sentence is not cruel or unusual, defendant has not established a constitutional violation." *Powell*, 278 Mich App at 324. Accordingly, the trial court properly sentenced defendant to 53 to 80 years' imprisonment for second-degree murder.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell